## Case No. 18,122.

### WYTHE v. SMITH.

[4 Sawy. 17.] [1]

Circuit Court, D. Oregon. June 14, 1876.

DONATION ACT—HUSBAND'S AND WIFE'S INTERESTS — EQUITABLE ESTOPPEL — RUNNING OF LIMITATIONS—COVERTURE.

1. The wife's share of the donation made by the act of September 27, 1850 (9 Stat. 496), was not her separate estate; and the act of January 20, 1852, which undertook to declare it so, so far as prior settlements are concerned, was void.

[Cited in Elliott v. Teal, Case No. 4;396.]

2. By virtue of the marriage the husband took an estate for the life of himself and wife in the latter's half of the donation claim, and it was not in the power of the territorial legislature to divest him of this estate, although it might exempt it from execution.

[Cited in Manning v. Hayden, Case No. 9,-043; Alexander v. Knox, Id. 170; Stubblefield v. Menzies, 11 Fed. 272, 274.]

3. What constitutes an estoppel in pais?

4. Equitable estoppels in pais cannot be set up as a defense to an action at law to recover the possession of real property.

5. The Oregon statute of limitations upon actions to recover real property does not run against a woman to whom the right to sue accrues during coverture, until the removal of such disability; and this, whether the action concerns her separate property or otherwise.

[Cited in Stubblefield v. Menzies, 11 Fed. 271.]

At law.

Addison C. Gibbs and Ellis Hughes, for plaintiff.

J. Quinn Thornton and W. F. Trimble, for defendant.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

DEADY, District Judge. This action is brought to recover the possession of lot four, in block five, in the town of Salem. The complaint alleges that the plaintiff [W. T. Wythe] is a citizen of California, and the defendant [Jannette Smith] of Oregon; that the plaintiff is the owner in fee-simple of the premises and entitled to the possession thereof, and that the defendant unlawfully withholds the same from him, to his damage $600.

The answer of the defendant denies all the material allegations of the complaint, except the citizenship of the parties, and alleges that she is the owner in fee of a certain described part of the premises, for which alone she defends.

The answer also contains a plea of estoppel, to the effect that the plaintiff ought to be precluded from alleging that he is the owner of, and entitled to the possession of the premises, because (1) that whatever claim of title the plaintiff has to the premises is derived through certain mesne conveyances from Chloe A. Willson, who, on May 7, 1852, with a knowledge that the premises were a part of a donation claim, one-half of which belonged to her in her own right, made no objection to the sale of said lot four to Joseph Smith by the trustee of Nancy M. Thornton, who then claimed to be the owner of the same by virtue of a conveyance thereof by William H. Willson, the husband of said Chloe A., to said Nancy M., the consideration of which inured to the benefit of said Chloe A.; (2) that in 1852 said Smith sold said lot four to Joseph Holman, and "said Chloe A., having a knowledge of her rights and of the sale," made no objection thereto, but acquiesced in the same; (3) that in 1853 said Chloe A., with a like knowledge of her rights in the premises, represented to L. F. Grover that said Holman was the owner of said lot, and advised and encouraged said Grover to purchase the same from said Holman as a suitable place for a law-office, and that said Grover was thereby induced to make said purchase, and afterwards, relying upon such representations, expended a large sum of money in building a law-office on the part of said lot claimed by defendant; (4) that in May, 1856, when said Chloe A. had knowledge of the fact that said lot was within her half of said donation, said Smith conveyed the same to said Holman with the knowledge of said Chloe and without objection on her part, and that, under like circumstances, said Holman, on December 5, 1856, conveyed the same to said Grover; (5) that on July 2, 1861, the defendant purchased from said Grover, for the sum of $1,600, the part of said lot for which she now defends, with the knowledge of said Chloe A., and without objection on her part, and that she acquiesced in all said transactions concerning said lot up to the time of her death in 1875.

The answer concludes with a plea of the statute of limitations; that the plaintiff, nor those under whom he claims, has not been seised or possessed of the premises in controversy within twenty years from the commencement of the action, January 3, 1876. The plaintiff demurs to the whole answer, to the plea of estoppel and to the statute of limitations conjunctively, and to the latter separately.

In support of the plea of estoppel, counsel for the defendant insists that the wife of a settler under the donation act of 1850 had a legal and separate estate in the portion of the donation inuring to her, and that therefore she could convey it, or by her acts in pais estop herself to assert her title to it, as if she were a feme sole. That the wife's interest in the donation is a legal one, there can be no doubt. It is granted to her by the act directly and unqualifiedly, to be held by her in her own right. No trust is declared concerning it, and no trustee or third person is interposed between her and the ownership of the property.

By the common law which was in force in Oregon at the passage of the donation act, real property, however acquired by the wife, was transferred to her husband during their joint lives, leaving only the reversion in her. But in cases where the instrument or act by which the property was conveyed to the wife provided that it should be for her sole or separate use and benefit, equity interfered, and, while admitting that, by virtue of the marriage, the present ownership of the property passed to the husband notwithstanding the words of exclusive use to her in the deed, treated and held him as a trustee of the estate thus vested in himself for the use and benefit of the wife. This constituted what was called a separate estate in the wife. It was the creation of equity, and the expression "separate estate of a married woman" always referred to an equitable estate held by the husband or a third person in trust for her. Bish. Mar. Wom. § 794 et seq.

As has been stated, the wife's share of the donation was a legal estate granted to her by apt and ordinary words of conveyance, in which the husband, by virtue of the marriage, immediately took a freehold estate. It is not claimed that the donation act imposed any trust upon this estate in the hands of the husband, or charged his conscience with the duty of administering it for the separate benefit of the wife, so as to make it in equity her separate estate, unless such is the effect of the words, "to be held by her in her own right." As I understand the argument of the learned counsel for the defendant, it is not contended that these words make the property her separate estate in equity as above described, or that any trust was imposed upon it in favor of the wife by this or any other provision of the donation act. But it is maintained that this property was in fact some sort of a "separate estate" of the wife's, because the grant to her provided that it was "to be held by her in her own right."

Is such the natural or possible effect of this phrase, or does the use of it in this connection manifest any intention upon the part of con-

gress to keep this grant to the wife out of the ordinary rule which gave the husband a present freehold in the wife's real property, however acquired?

A woman is said to hold property in her own right when she does not derive it from her husband; and a man is said to hold property in the right of his wife when his interest in it arises out of his marriage with her. The expression is an untechnical and vague one, and no instance has been shown in which it has been used to exclude or limit in any degree the marital rights of the husband in the real property of the wife. It is not clear why the words were used in the donation act, and the probability is that, like other expressions contained in it, they were inserted without much consideration. My impression is that they were placed in the act upon some vague apprehension that, as the whole section was first granted to the settler (the husband), and on account of his services upon the land, without them it might be claimed that the wife, instead of taking directly from the United States, derived title through the husband as his wife,—held in his right by virtue of the marriage, instead of her own, and that therefore the property might be in some way liable for his prior debts, contracts and obligations. To exclude this conclusion,—to avoid this possible doubt or danger,—it seems probable that these words were inserted immediately after the clause qualifying the grant so that the wife's half of the donation, instead of passing through the husband, went from the United States to her directly. It being provided that the wife should be considered as holding in her own right, and not in that of her husband, this would preclude the conclusion that she claimed through or under him, and therefore the property would be possessed by her, and descend, upon her death, the same as if inherited from her father or other ancestor. To hold or be seised of property in your own right is not incompatible with the use being in another. Seisin and use are not identical; and the seisin may be in one person and the use in another. A feoffee to use held or was seised in his own right, but to the use of another. The seisin or holding relates to the acquiring of the estate, and the use to the purposes for which it shall be held. Here the wife held or was seised in her own right, but not to her own separate or sole use and benefit, and therefore she had no separate estate in the property. As soon as she became seised, by reason of the marriage, the law cast upon the husband an estate in the premises for their joint lives. Bish. Mar. Wom. § 529.

But it is also claimed that this property became the separate estate of the wife by operation of the act of the territorial legislature of January 20, 1852, entitled "An act to exempt the wife's portion of lands, donated in Oregon territory by act of congress, approved September 27, 1850, from the debts and liabilities of her husband." This act provided "that all right and interest of the wife, both legal and equitable, in and to the land donated to settlers in Oregon territory, by an act of congress approved September 27, 1850, both now and hereafter, be and hereby is secured to the sole and separate use and control of the wife; and such interests in said lands, both legal and equitable, of the wife, and the rents and profits thereof, shall in no wise be made subject or liable for the debts or liabilities of her husband, whether contracted before or after the passage of this act." This act was repealed January 30, 1854, by the general repealing act of the Code of that year. As appears from the title, the intention of the act was to exempt the wife's portion of the donation "from the debts and liabilities of her husband," and this, doubtless, was the leading idea in its enactment. The language used is not accurate, but the purpose is apparent. It was not intended to exempt the reversion —the interest which remained in the wife notwithstanding the marriage—from the husband's debts and liabilities, but only the husband's present interest in the property. This interest or marital right of the husband was a freehold, and liable to be taken on execution and sold to satisfy his debts. Bish. Mar. Wom. § 585; Starr v. Hamilton [Case No. 13,314]. But to exempt the husband's interest in the wife's donation from execution did not divest him of such interest or reinvest the wife with it in any way. But the body of the act, in addition to exempting the husband's interest in the wife's donation from execution, did declare that "the right and interest of the wife" in such donation "is hereby secured to the sole and separate use and control of the wife."

At the date of this act all the right and interest of Chloe A. Willson in her share of her husband's donation was simply the reversion upon his death, he being already, by virtue of the marriage, seised of an estate in the premises for their joint lives. Strictly speaking, then, there was nothing in this case, in this respect, for the act to apply to. It did not in terms include the present ownership, for that being in the husband, was not "the right or interest of the wife," and the reversion was already hers beyond a question.

But assuming, what is probable, that it was intended by the phrase "right and interest of the wife in the land," to include all the interest which came to her from congress under the donation act, then the act, as to settlements already made, was so far void.

Although it does not distinctly appear from the plea of estoppel when this settlement was commenced, it is well known to the court, from its records, to have been made long before the passage of the donation act, September 27, 1850; while in the defendant's brief it is admitted that it was made at least as early as that date. This being so, the husband was seised of a life estate in the wife's

share before the passage of the act of January 20, 1852. This was a vested interest which the legislature could not deprive him of. They might exempt it from execution, in the interest of the family, or otherwise, but they could not dispossess him of that which had become his by the existing law of marriage. Starr v. Hamilton [supra]; White v. White, 5 Barb. 474; Westervelt v. Gregg, 2 Kern. [12 N. Y.] 202.

At common law a married woman could not pass her freehold except by fine and recovery. Her deed was absolutely void. Bish. Mar. Wom. § 586. But by the statutes in force in this state, at least since September 29, 1849, a married woman could convey any interest of hers in lands by joining with her husband in a deed thereof, and not otherwise. See Act Sept. 29, 1849, adopting the Iowa act "to regulate conveyances;" Sess. Laws 1849, p. 138; "An act relating to alienation by deed," etc., Code 1854, p. 476; same act, Code 1874, p. 515.

The donation act, not containing any provision touching the interest of the husband in the wife's share of the donation, or the alienation of the same, except to forbid all contracts for the sale of the same prior to the completion of the residence and cultivation required by the act, both subjects were governed by the local law,—the common law, —except as modified by the above cited statutes. It follows that the wife during coverture could do no act in pais which would estop her from asserting her right to her land, and that the only way she could divest herself of her interest in her donation was by fine or recovery, or joining with her husband in a conveyance thereof. An estoppel in pais can never be more effectual than by deed. And as Chloe A. could not have affected her interest in this property by her separate deed, of course she could not by an estoppel in pais. 2 Washb. Real Prop. p. 459.

The plea of estoppel is bad. But admitting that the wife's share of the donation was her separate estate, and that she could, by her acts in pais, estop herself from asserting her title thereto, the same as if she were a feme sole, the facts stated in the plea do not constitute an estoppel. They lack utterly the necessary and essential ingredients of intention to deceive on the part of Chloe A., and the want of knowledge, or all convenient means of acquiring it, on the part of Smith, Holman, Grover et al., concerning the true state of the title. The alleged sales of the property commenced in 1852 and ended in 1861. Chloe A. is not charged with anything more than simple acquiescence in relation to any of them except the one from Holman to Grover, which took place in 1853. As to this one, she is alleged to have advised the purchase, saying that Holman was the owner of the lot. Incidentally it appears from the plea that up to this time the donation had not been partitioned between the husband and wife. In what part of it her

share would be assigned, she could not say or direct. The power of partition was vested in the surveyor-general, absolutely. Wythe v. Haskell [Case No. 18,118].

She may have thought he would so divide it as to bring this lot within the share of her husband and co-tenant, who, it appears, had sold the same, probably upon the same impression or expectation, before 1852. But if so, she was mistaken. The donation was divided so that the premises were included in her share, and thus it turned out that Holman was not the owner of the lot, and Grover acquired nothing by his purchase from him, nor even by his erection of a law-office thereon. Nor can anything be more improbable than that Mr. Grover, a distinguished lawyer, was misled by this casual opinion or expression of this unlearned feme covert, as to the true state of the title, or that he did not know, and had no better means of knowing than she, what was the legal effect of her husband's prior deed to this lot.

There was a time, commencing probably with Wendell v. Van Rensselaer (1815) 1 Johns. Ch. 353, when this doctrine of equitable estoppel, upon the seductive plea of promoting justice in particular cases, threatened to sweep away the statute of frauds and leave the right to real property to rest upon the precarious tenure of the uncertain and prejudiced testimony of ignorant and interested witnesses to the casual, stale and parol acts and declarations of parties no longer in existence or interested to maintain the title.

But since the announcement of the salutary rule contained in Hill v. Epley, 31 Pa. St. 334, and Boggs v. Merced Min. Co., 14 Cal. 367, this dangerous and indefinite doctrine has been brought within reasonable and safe limits again. As was said by this court, in McGuire v. Neff [unreported], December, 1875: "If such facts constitute an estoppel, then was the statute of frauds passed in vain, and paper titles are not worth the material upon which they are written. * * * Before a court of equity will estop a party from asserting his title to real property, it must be shown that there is some degree of turpitude in his conduct. To constitute an estoppel in pais in such a case, it must appear that the party sought to be estopped, with a knowledge of his rights in the premises, made some admission or declaration by word or deed, with an intention to deceive the party claiming the estoppel, or those under whom he claims, or with such carelessness or negligence as amounts to fraud; that the party alleged to have been misled was not only destitute of all knowledge of the true state of the title in question, but of all convenient means of acquiring such knowledge; and that he directly relied upon such admission or declaration, and will be injured by allowing its truth to be disproved." Boggs v. Merced Min. Co., 14 Cal. 367; Carpentier v. Thirston, 24 Cal. 268;

Davis v. Davis, 26 Cal. 38; Story, Eq. Jur. § 391; Fields v. Squires [Case No. 4,776].

At the date of this alleged declaration to Grover he had at least the same means of knowing as Mrs. Willson, that the husband's deed could not convey the wife's interest in the land, and that she herself could not convey it unless her husband joined in the deed for that purpose; that the surveyor-general had the absolute power to partition the donation between the husband and wife as he saw proper, and that then and since September 27, 1850, both Chloe A. and her husband were forbidden by the donation act to make any sale of the premises, and were therefore incapable of so doing, jointly or otherwise. She could not have intended to deceive him, and he could not have been misled by what she said—which at best was a mere expression of opinion about a matter of which he presumably was better informed than she. The facts stated do not constitute an estoppel, even if Chloe A. had then been a feme sole.

But if these facts constituted a sufficient equitable estoppel, it would not be a good defense to this action at law. In Adams v. Burke [Id. 49],—1875,—this court decided, after thorough argument and careful consideration of the question, that what is known as an equitable estoppel could not be pleaded in this state, and therefore not in this court, as a defense to an action of ejectment. At common law an estoppel in pais could only arise in the case of those solemn and peculiar acts to which the law gave the power of creating a right or passing an estate. Among these were feoffment and attornment. The instances given by Lord Coke are livery, entry, acceptance of rent, partition and acceptance of an estate. Subsequently, estoppels in pais were extended by courts of equity, until there grew up a class of estoppels called equitable estoppels in pais. Except in cases concerning the title to lands, in time these were recognized and allowed by courts of law; and in some of the United States without this exception. But I know of no act or decision in this state authorizing such practice, and it is to be hoped there never will be.

The plea of the statute of limitations appears to be sufficient on its face; but on the argument it was admitted and assumed that Chloe A. Willson was a feme covert, since prior to 1852 and down to a period less than twenty years before the commencement of this action. Admitting this fact, counsel for defendant maintained that this being her separate property the statute ran against her as if she was a feme sole. However this may be, the conclusion having been reached that this was not the wife's separate property, the argument based upon the contrary assumption falls with it.

But the statutes of limitations in force in this state since May 1, 1854, expressly provide that in the case of married woman to whom a cause of action accrues for the recovery of real property, the time of such disability or marriage shall not be counted as a part of the limitation. Code 1854, p. 172; Code 1876, p. 108. It is not apparent why these statutes do not apply to all married women, whether the property be her separate property or not. True, she might have sued alone for her separate property; but the exemption proceeds upon the theory that while she is under the disability of coverture, she is not in fact at liberty to sue without her husband's assent, even if the law will permit it. Now the husband may be a party to the disseisin and interested in having the bar of the statute established, and to prevent this possible wrong the law has provided without exception or qualification that the limitation upon a woman's right to sue for the recovery of her real property shall not run during coverture.

The demurrer is sustained as to the plea of estoppel and overruled as to the rest of the answer. If the plaintiff wishes to avail himself of the disability of Chloe A., during her husband's life-time, he must reply to the plea of the statute and set up the coverture.