## STUBBLEFIELD *v.* MENZIES.

*(Circuit Court, D. Oregon. March 27, 1882.)*

1. DONEE UNDER SECTION 8 OF THE DONATION ACT.
    J. R. took an undivided one-fifth of the land occupied by her deceased father, under section 8 of the donation act, (9 St. 497,) and married H. in March, 1859. *Held*, that she took such interest directly from the United States as her general property, but that after February 14, 1859, under the operation of sec-tion 5 of art. 15 of the constitution of the state, it became her separate prop-erty and not subject to the marital rights of her husband.

2. LIMITATION—LIFE ESTATE AND REMAINDER.

When the husband has a life estate in the lands of the wife and she the remainder, the statute of limitations runs against him in respect to such life estate, but not against the wife in respect to the remainder, during the continuance of such life estate; and when such life estate is lost by an adverse possession sufficient to bar an action by the husband for the recovery thereof, a conveyance of the premises by the husband and wife only passes the wife's interest, the remainder, and therefore does not enable their grantee to maintain an action for the possession during the life of the husband.

3. STATUTE OF LIMITATIONS—REPEAL BY IMPLICATION.

By the law of Oregon since May 1, 1854, an action to recover possession of real property was barred by an adverse possession of 20 years, and in case of a married woman the limitation did not include the period of coverture; and during the same time a married woman might bring an action to recover her separate property without joining her husband therein. On October 17, 1878, an act was passed (Sess. Laws, 21) reducing this period to 10 years, and providing that this period shall not be extended more than five years by reason of the disability of marriage; and at the same session of the assembly an act was passed, (Sess. Laws, 92,) on October 21st, concerning the rights and liabilities of married women, and the relation between husband and wife, "which provided (section 7) that a wife might prosecute and defend all actions at law or in equity, for the preservation and protection of her rights and property, as if unmarried." *Held,* that the passage of the second act did not affect the first one, and that, notwithstanding it, a married woman was entitled to five years, in addition to the time allowed an unmarried one, within which to bring an action for the recovery of the possession of her real property.

Action to Recover Possession of Real Property.
*George H. Durham,* for plaintiff.
*Julius Moreland* and *Cyrus Dolph,* for defendant.

DEADY, D. J. The plaintiff, a citizen of the state of Illinois, brings this action against the defendant, a citizen of Oregon, to recover the possession of an undivided one-fifth of the donation of Calvin Reed, situate in township 1 N., range 3 E. of the Wallamet meridian, which he alleges in his complaint the defendant unlawfully withholds from him, to his damage, $1,000.

The defendant, answering the complaint, denies that the plaintiff is the owner of any interest in the premises, or entitled to the possession thereof, and further pleads as a defence to the action the statute of limitations; that is, that neither the plaintiff nor his predecessor in interest has been seized or possessed of the premises within 20 years, but that the defendant, and those under whom he claims, have been in the open, notorious, and exclusive possession thereof, claiming the same in fee-simple, under color of title, for more than 20 years.

The plaintiff, replying to the answer, denies the allegations thereof, and alleges that on October 23, 1854, Calvin Reed became a settler

on the premises under the act of Congress of September 27, 1850, (9 St. 497,) commonly called the "donation act," and on November 16, 1855, duly filed his notification thereon, together with the preliminary proofs required by law, and that he continued to reside thereon under said act until his death, in February, 1856, leaving five children surviving him; that thereafter due proof was made of Reed's compliance with the act up to the time of his death, so that a patent certificate was duly issued to his heirs at law therefor on April 30, 1863, in pursuance of which a patent was issued by the United States to said heirs on March 26, 1866; that one of said five children—Juliet Reed—was born in 1840 and married to one Harne in March, 1859, while still an infant, and is still his wife; and that in 1880, and before the commencement of this action, the plaintiff, by a conveyance duly executed by said Juliet and her husband, "succeeded" to the interest of said Juliet in the premises. To this reply the defendant demurred generally, and upon the argument insisted that the facts stated did not take the case out of the statute of limitations, as amended by the act of October 17, 1878, (Sess. Laws, 21,) which provides that sections 4 and 17 of the Oregon Civil Code be amended so that an action for the recovery of the possession of real property shall be brought within ten years after the cause of action accrues, or within one year from the approval of that act; and that if the person entitled to bring such an action be, at the time the cause thereof accrues, "within the age of 21 years" or "married women," (a married woman,) the time of such disability shall not be a part of the limitation; but such limitation "shall not be extended more than five years by any such disability," nor in any case longer than one year after such disability ceases.

Prior to this amendment the period of limitation for such actions was 20 years, and the time the person entitled to bring the action was under the disability of infancy or coverture was altogether excluded from the limitation. The children of Reed took this donation, under section 8 of the donation act, upon the death of the settler, their father, and the proof of his compliance with said act up to the time of his decease, directly from the United States, as its donees, and not as the heirs of the deceased settler. *Hall* v. *Russell*, 3 Sawy. 509; S. C. 101 U. S. 512.

The plaintiff claims under the donee of the United States, and appears to have a good paper title to an undivided one-fifth of the donation. The claim of the defendant, so far as appears, rests upon an adverse possession of 20 years prior to the commencement of this action—September 7, 1881. This cause of action did not ac-

crue, then, until this adverse possession commenced—September 7, 1861. At that time Juliet Reed, the plaintiff's grantor, was a married woman. She may also have been an infant, for according to the replication she was born in the year 1840. But as an uncertain or ambiguous allegation is taken most strongly against the pleader, the court must conclude that her birth was prior to September 7th in that year, because, consistently with the allegation, it might have been. Therefore it will be assumed that she was not laboring under the disability of infancy when this cause of action accrued, because she may have been then 21 years of age. The act of October 11, 1864, (Or. Laws, 564,) fixing the majority of females at 18 years of age or lawful marriage, was passed after she became of age, and has no application to the subject.

As the law then was Juliet had 20 years in which to bring her action after she was relieved from the disability of marriage. So the case stood when, 17 years thereafter, before the expiration of the 20 years and while she was still a married woman, the act of October 17, 1878, *supra*, was passed, which in effect gave her one year after its approval to bring her action, if a single woman, and, if married, five years in addition thereto, making in all six years from October 17, 1878. Upon this statement of the case it is plain that the action is not barred. But the defendant contends that the interest which Juliet took in this donation was her "separate property," and therefore, as to it, she was not disabled to sue, because she might by the law of this state since May 1, 1854, (see Or. Laws, 1853–4, p. 65; Or. Civil Code, § 30,) have brought an action to recover the possession thereof without joining her husband therein.

There is no reason known to the law for saying that Juliet took her interest in this donation as her separate property. It came to her generally and without qualification as a donation from the United States, with not a word in the law making the grant, or a circumstance in the nature of the case, to restrain or limit it to her sole and separate use, to the exclusion of the marital right of her husband, according to the then law of the state. As the case stood prior to the transition from the territorial to the state government—February 14, 1859—whenever the woman became married the law cast upon her husband an estate in her property for the period of their joint lives. He became seized of a freehold therein *jure uxoris*, and was entitled to the rents and profits accordingly. 2 Kent, 130; Bishop, M. W. § 529; *Starr* v. *Hamilton*, 1 Deady, 272; *Wythe* v. *Smith*, 4 Sawy. 17; *Elliott* v. *Teal*, 5 Sawy. 249. And this was a vested

right, and no more subject to legislative control than if it had been purchased by the husband with his money from a stranger. He could only be deprived of it by due process of law. *Starr* v. *Hamilton,* 1 Deady, 275; *Wythe* v. *Smith,* 4 Sawy. 23.

But the marriage of Juliet with Harne did not take place until after February, 1859, when, as defendant contends, the law in regard to the right of the husband in the wife's property was changed by article 15, § 5, of the constitution of the state, which provides: "The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of the husband; and laws shall be passed for the registration of the wife's separate property." The language of this provision is somewhat vague and indefinite. It does not, in so many words, undertake to make any property of a married woman her separate property that was not so before, or which would not be so independently of it. It only professes to exempt her property from the debts and contracts of her husband. Her separate property, if she had any, was already so exempt, and there was nothing for it to take effect upon, except her general property, which was then subject to the marital rights of her husband. But in *Starr* v. *Hamilton, supra,* 274, this court held that "so far at least as third persons are concerned," this clause ought to be construed as equivalent to a declaration that the property enumerated therein shall be the separate property of the wife, because, "if the wife's property is not 'subject to the debts or contracts of the husband,' he is thereby precluded from any control over it, and if he has any benefit or interest in it, it is beyond the reach of his creditors."

The same conclusion seems to have been reached by the supreme court of the state in *Rugh* v. *Ottenheimer,* 6 Or. 231.

Upon this point the plaintiff contends that the constitution does not prevent the husband from taking a freehold in his wife's property, as at common law, but only deprives him, in the interest of the family, of the power to dispose of it or charge it by his debts, and that he is nevertheless entitled to the possession for their joint lives, and if deprived of it may maintain an action therefor.

Upon this theory of the case the statute of limitations has never commenced to run against the wife, who, since her marriage and before the disseizin, has only held an estate in remainder in the property, and was not, therefore, entitled to the possession. The statute of limitations does not affect the right of a party entitled to the estate in remainder during the continuance of the particular

estate or freehold; nor does the laches of the tenant for life affect the remainder-man. *Jackson* v. *Schoonmaker,* 4 Johns. 401; *Jackson* v. *Sellick,* 8 Johns. 202; *Moore* v. *Jackson,* 4 Wend. 64. But the right of the husband of Juliet as tenant of the particular estate is barred by the 20 years' adverse possession of the defendant. The husband has never been under any disability, and was bound to bring his action for the possession within 20 years from the commencement of the adverse possession of the defendant, or, after the passage of the act of October 17, 1878, within one year from the approval of that act, which he failed to do.

The legal deduction from these premises is that this action cannot be maintained, because the wife, as tenant of the remainder, is not entitled to the possession during her husband's life, and neither is the husband, as tenant of the freehold or life estate, so entitled, because his right is barred by the statute of limitations.

But counsel for the plaintiff seeks to avoid this conclusion from his premises by the suggestion that the conveyance of the husband and wife to the plaintiff united both estates in him,—the particular or less estate being, in the language of the books, merged or sunk in the greater,—and that, therefore, he can maintain this action as the grantee of the whole estate. A merger of estates only takes place where the greater and less estate meet in one and the same person. 2 Black, 177; *Or. Trust Co.* v. *Shaw,* 5 Sawy. 336. But in this case the husband, being disseized of his estate and barred of his remedy to recover it before the conveyance to the plaintiff was made, had then nothing in the premises to convey. The estate for his life, which it is claimed that he acquired in the property on his marriage with Juliet, was already out of him and practically in the defendant. And this is so, whether we consider the statute as operating to pass the title to the life estate from the husband to the defendant, or as merely rebutting the right of the latter to claim the same. In either case the plaintiff has lost what the defendant has gained. Angell, Lim. §§ 1–11; *Leffingwell* v. *Warren,* 2 Black, 605; *420 Min. Co.* v. *Bullion Min. Co.* 3 Sawy. 657. But upon the authority of *Starr* v. *Hamilton, supra,* and *Rugh* v. *Ottenheimer, supra,* the husband never acquired any estate in this property. The marriage having occurred after the constitution went into effect, the property is to be regarded as the separate property of the wife, in which he acquired no interest, and the case must therefore finally turn upon the question whether the wife had one year or six after the approval of the act of

October 17, 1878, *supra*, in which to sue; or, in other words, whether the five years additional given by section 17 of the Code, as amended by that act, applies to all actions brought by married women for the recovery of the possession of real property. The statute makes no distinction. It says, in effect, that a married woman shall have not to exceed five years within which to bring an action to recover the possession of real property, in addition to the time allowed by section 4 of the Code to persons not laboring under such disability.

But counsel for defendant contends that as by section 7 of the act of October 21, 1878, (Sess. Laws, 93,) it is provided, among other things, that a wife may prosecute and defend all actions at law or in equity for the preservation and protection of her rights and property as if unmarried, therefore she not only *may* prosecute an action for the recovery of real property within the time allowed an unmarried one, but she *must* do so.

This conclusion is based on the assumption that section 17 of the Code, as amended by the act of October 17th, *supra*, is, so far as it gives married women five years additional time in such cases, repealed by said section 7 of the act of October 21st, *supra*. In support of the position counsel cite *Ball* v. *Bullard*, 52 Barb. 141; *Enos* v. *Buckley*, 94 Ill. 456; *Gray* v. *Yates*, 67 Mo. 601; *Slater* v. *Cave*, 3 Ohio St. 87.

In the first case the acts of 1860–2 having provided that a married woman might maintain an action for an injury to her person as if single, and recover judgment therein to her sole and separate use, the court held that the prior statute, extending the time of bringing such an action in case the party injured was a married woman, was in effect thereby repealed, and that such action was barred by the lapse of six years, as in ordinary cases. The philosophy of this ruling, if not the ruling itself, is, I think, unsound. So far as a married woman was exempt from the operation of the statute of limitations, it was because of her *status* as a married woman, which was supposed to disqualify or disable her from asserting her rights, and not for the reason that she therefore might not be permitted to sue alone.

This disability was imputed to her because, during marriage, she was regarded by the common law as being *sub potestate viri*—under the power of the husband, (2 Kent, 129;) and therefore not free to sue without his assent, even if she had the legal right to do so. In *Wythe* v. *Smith*, 4 Sawy. 27, this court said: "The exemption proceeds upon the theory that while she [the wife] is under the disabil-

ity of coverture, she is not in fact at liberty to sue without her husband's assent, even if the law will permit it." Indeed, the husband may be interested against her, and to prevent her being injured by the operation of the statute while under this restraint, it was provided by the act of 21 James I., of which the American statutes are substantial copies, that the limitation should not run against a woman while she was married. In the second case it was held that the statutes of 1861, which gave a married woman the same control over her property as a single one, repealed the disability clause as to married women in the limitation act of 1839. The third case is nowise in point, and the fourth one only decides that the phrase "within 21 years," in the limitation act of 1831, was the equivalent of "within the age of majority," and therefore the act of 1834, fixing the age of majority for females at 18 years, so far modified or repealed it. But there is a material difference in these cases and the one under consideration. In all, the question is one merely of legislative intent. In the cases cited it was held that the prior statute was modified by the subsequent one. But the fact of the considerable lapse of time between the two statutes was a circumstance that favored that conclusion. Here there is no such reason for inferring an intent to change the law. On the contrary, the fact that the acts were passed at the same session, and within four days of each other, bears strongly in the other direction. There is no direct conflict between the two acts. Repeals by implication, if permitted at all by the constitution of the state, are not favored. When there are two acts on the same subject, the rule is to give effect to both if possible. There must be a plain repugnancy to produce a repeal by implication. When both acts may stand they shall. Smith, Com. § 757; *U. S.* v. *Tynen,* 11 Wall. 92.

As already stated, a married woman could always sue alone in this state, when, as in this case, the action affected her separate property; that is, she could sue as a *feme sole,* and she can do no more under the act of 1878, *supra.* Yet the statute of limitations has always given her additional time, on account of her *status,* within which to bring an action to recover real property. Indeed, until the act of 1878, *supra,* the time during which she was in the state of marriage was not counted as a part of the limitation, and she was entitled to the full period of 20 years after the removal of such disability. It is evident, from this, that up to 1878 it was not the intention of the legislature to compel a married woman to bring her action within the same time as an unmarried one because it permitted her

to do so. By the act of 1878 a radical change was made in the law. The general period of limitation was reduced from 20 to 10 years; and the time allowed for the disability of marriage was reduced to five years at the furthest. But still, a married woman, although she could sue as an unmarried one to recover her real property, was specially excepted from the operation of the statute during marriage, so that the limitation was not thereby extended more than five years. The act is evidently a compromise between the old and the new idea, and may be only a stepping-stone to the complete abolition of the distinction in this respect between the married and unmarried state. But for the time being it is the law. It represents the legislative intention of the assembly of 1878; and it is not the province of the court to anticipate the future.

Did the legislature, by the passage of an act at the same session entitled "An act defining the rights and fixing the liabilities of married women, and the relation between husband and wife," intend to repeal the act just passed by it? It seems to me there can be but one answer to this question. The subjects of the acts are cognate, but not identical, and there is no repugnancy or conflict between them, and they must both be considered in force unless the contrary intent plainly appears. The general provision contained in section 7 of the latter act—that the wife *may* prosecute and defend *any* action concerning her rights or property as an unmarried woman in her own name—in no way conflicts with the positive provisions in the former, giving her not to exceed five years more than an unmarried woman within which to bring an action for the recovery of her real property. These acts were passed contemporaneously. The scope of neither is trenched upon by the other. There is no ground, therefore, upon which the court can say that the latter was in any way intended to modify the former. Therefore the plaintiff, who stands in the shoes of Juliet Harne, his grantor, has until October 17, 1884, or six years from the approval of the act of that date, within which to bring this action. The demurrer is overruled.