Argued February 14; decided April 1, 1895.

# MORRISON *v.* HOLLADAY.

## LATTIE - MORRISON *v.* HOLLADAY.

[ 39 Pac. 1100.]

1. JUDGMENT OR DECREE AS EVIDENCE — ESTOPPEL.— Under the general rule that the record of a judgment or decree *in personam* or *quasi in rem* affects only parties and privies, a decree in a suit between A and B, for example, cannot be introduced in a suit between C and B, as an estoppel against B, for it is obvious that C is not bound by that decree, and if he is not then B is not, for estoppels must be mutual.

2. JUDGMENTS OR DECREES AS EVIDENCE OF FACTS — STRANGERS.— Judgments or decrees *in personam* are not admissible in suits or actions between strangers, or between a stranger and a party or privy, as evidence of the statements therein contained, or of the facts upon which the adjudication was based.

3. LIMITATION OF ACTIONS AGAINST MARRIED WOMEN — CODE, § 17.— A married woman has fifteen years from the time when the cause of action accrues to her within which to begin action to recover land, under section 17 of the Oregon Code: *Mitchell* v. *Campbell*, 19 Or. 198, and *Stubblefield* v. *Menzies*, 8 Sawy. 41 (11 Fed. 268), approved and followed.

4. LIMITATION OF ACTIONS AGAINST MARRIED WOMEN — LAWS, 1878, PAGE 92 — LAWS, 1880, PAGE 6.— Whatever may bave been the effect on the legal disabilities of married women of the act of eighteen hundred and seventy-eight, page 92, (now sections 2992, 2869, 2870, 2996, 2871, 2872, 31, 2873, 2997, and 2874, Hill's Code,) and the act of eighteen hundred and eighty, page 6, (now sections 2998 and 2878 of Hill's Code,) they did not repeal

or modify the rule laid down in section 17 of Hill's Code, by which a married woman is allowed fifteen years to institute an action for the recovery of real property.

5. SERVICE OF SUMMONS — COMMENCEMENT OF ACTION — LIMITATIONS — CODE, §§ 15, 316.— Section 15 of Hill's Code, which provides that an attempt to commence an action shall be equivalent to the commencement thereof, so as to toll the statute of limitations, when the complaint is filed and the summons delivered to the sheriff of the county in which the defendants, or one of them, reside, with the intent that it shall be actually served, clearly contemplates that the defendant residing in the county where the summons is lodged for service shall be a proper party to the action, a real defendant, and not simply a nominal party; and a mere hired servant or employé temporarily in possession of land is not a proper party to an action to recover possession thereof, under 1 Hill's Code, § 316, requiring an action to recover land to be commenced against a party in the "actual possession" thereof at the time. The lodging of a summons and complaint for service against such a party to an ejectment action does not stop the running of the statute.

6. GOOD FAITH AS AN ELEMENT OF ADVERSE POSSESSION.— That one acts in bad faith in taking possession of land under a will or deed purporting to give him title thereto, knowing that his title is bad, and that another has an outstanding interest therein, will not prevent his obtaining title by adverse possession, if such possession has the necessary elements of adverse occupancy in other respects.

7. CONFLICTING TESTIMONY — QUESTION FOR JURY — LIMITATIONS.— Where the testimony is conflicting as to whether the possession of one claiming under a will was adverse to the heirs, or was in recognition of their title as cotenants, an instruction assuming that the statute of limitations would not run in favor of her grantee until he recorded his deed and entered into actual possession is erroneous; the question of when the statute began to run is, under such circumstances, peculiarly one for the determination of a jury.

APPEAL from Clatsop: THOS. A. MCBRIDE, Judge.

This is an action brought by Mary E. Lattie-Morrison against Joseph Holladay, Chas. B. Bellinger, and W. A. Malin, to recover possession of an undivided one third of the donation land claim of Elizabeth Lattie in Clatsop County, Oregon. The defendants Bellinger and Malin by their answers denied being in possession of the property, and disclaimed any interest in or claim thereto, and the action was subsequently dismissed as to them. The

defendant Holladay denied all the allegations of the complaint, except his possession, and set up as a defense the statute of limitations, and upon this issue alone the cause was tried.   The facts are, that on May fifteenth, eighteen hundred and sixty-eight, Elizabeth Lattie died, seized and possessed of the land in question, leaving as her heirs the plaintiff and three other children, to wit: Ellen Cloutrie, John Lattie, and William Lattie, and a will in which she purported to devise the whole of her property to her daughter Ellen.   Subsequently John Lattie died intestate, leaving as his heirs his surviving brother and two sisters; and by reason thereof, and the invalidity of the will as to plaintiff, she now claims to be and is, unless barred by the statute of limitations, the owner and entitled to the possession of an undivided interest in the premises in controversy.   After the death of Mrs. Lattie her will was regularly admitted to probate, the estate duly administered upon, and on the second of September, eighteen hundred and seventy-two, the administrator was discharged, and the property turned over to the possession of Ellen, the devisee named in the will, who remained in possession thereof until she sold to the defendant and his grantors as hereinafter stated.   On December thirteenth, eighteen hundred and seventy-two, Mrs. Cloutrie and her husband sold and conveyed twenty-five acres of the claim, and on July twenty-sixth, eighteen hundred and seventy-three, an additional nineteen acres, which, together with the twenty-five-acre tract, has since been known as the Seaside Hotel property, to the Oregon Real Estate Company, a corporation of which Ben Holladay was president.   Immediately after the purchase the real estate company, through Ben Holladay, took possession, and proceeded to improve the property by constructing thereon a hotel building and other valuable improvements to be used as a seaside summer resort, and remained in

27 OR.— 23.

possession until December twenty-ninth, eighteen hundred and seventy-five, when it was conveyed to the defendant Joseph Holladay to whom the possession was delivered. On January twenty-seventh, eighteen hundred and seventy-four, Mrs. Cloutrie mortgaged the remainder of the claim to Ben Holladay to secure the payment of the sum of four thousand dollars and interest. This mortgage was subsequently assigned to the defendant, who foreclosed it, and advertised the property for sale under the decree, whereupon, Mrs. Cloutrie, in satisfaction thereof, by deed dated June twenty-fifth, eighteen hundred and seventy-seven, and recorded on July sixth, eighteen hundred and seventy-seven, conveyed to him the whole of the donation claim of her mother, and a short time thereafter vacated the premises. The defendant gave evidence tending to show that he immediately took possession thereof, and continued in the open, exclusive, and adverse possession of the property conveyed by the deed of June twenty-fifth, eighteen hundred and seventy-seven, and the Seaside Hotel property, until November, eighteen hundred and eighty-three, when he surrendered possession to the receivers appointed in a suit brought against him by Ben Holladay; that the receivers remained in the exclusive and adverse possession of the property until the eighteenth day of July, eighteen hundred and eighty-nine, when by order of the court it was again turned over to him, and he went into possession, claiming the same as owner, under and by virtue of a deed from Geo. W. Weidler, trustee and receiver, made and delivered to him at that time. The trial resulted in a verdict and judgment in favor of the plaintiff for an undivided one fourth interest in the donation claim of her mother, excepting the Seaside Hotel property, a sixty-five-acre tract, and a two-acre tract sold by Mrs. Lattie, to which neither party laid claim in this action. From

such judgment the defendant appeals, assigning error in the admission of evidence, and the giving and refusal of instructions.                                    REVERSED.

For appellant there was a brief by *Messrs. Frank J. Taylor* and *Carey, Idleman, Mays and Webster,* and an oral argument by *Messrs. Taylor* and *Charles H. Carey.*

For respondent there was a brief by *Messrs. Fulton Brothers,* and an oral argument by *Mr. Charles W. Fulton.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. On the trial plaintiff gave evidence tending to show that during the time Mrs. Cloutrie and Ben Holladay were in possession of the property in controversy, they both recognized and admitted her right as a tenant in common with them, and that neither claimed an exclusive ownership or possession as against her, and did nothing amounting to an ouster. The defendant, however, contended, notwithstanding this fact, if it was a fact, that he had been in the adverse possession claiming as owner under the deeds from Mrs. Cloutrie and the real estate company for more than the statutory time, and was therefore entitled to prevail in this action, independently of the acts or conduct of either Ben Holladay or Mrs. Cloutrie. To meet this contention, and to show that he was in possession up to eighteen hundred and eighty-nine as a mortgagee only, the plaintiff offered and the court admitted in evidence a decree of the Circuit Court of Multnomah County, of date July twelfth, eighteen hundred and eighty-six, in a suit between Ben Holladay and the defendant, in which it was found, adjudged, and decreed that the defendant held such property only as the mortgagee of Ben Holladay, and directing that redemption be made within ninety days, or in default thereof that the property be

sold to satisfy the defendant's claim thereon. This decree was not only admitted in evidence, but the court instructed the jury that it conclusively established the fact that Ben Holladay was the real owner of the property in controversy, and the defendant but a mortgagee in possession, and therefore his rights were to be ascertained and determined the same as if Ben Holladay had remained in possession of the property, and had been holding in recognition of plaintiff's title, and that the possession of the defendant or the receivers appointed in the suit of *Holla day* v. *Holladay* should not be regarded as adverse to plaintiff until after the judicial sale in eighteen hundred and eighty-nine.

The admission of this decree in evidence, and the effect given thereto by the court, constitutes the first and an important assignment of error in this case. The objection to its admission is that, as to the parties to this action, it is *res inter alios acta,* and therefore not competent evidence. The fundamental rule on this subject undoubtedly is that the record of a judgment or decree *in personam* or *quasi in rem* can affect only parties and privies,—that is, those who have the right to adduce testimony or cross-examine the witnesses introduced by the other side, or who have a right to defend the action or suit, or to appeal from the judgment or decree, or those who claim by mutual succession or relationship to the same rights of property or subject matter. All other persons are strangers, and the judgment is not binding upon them: Starkie on Evidence (10th ed.), 318; Black on Judgments, §§ 600, 794; 1 Herman on Estoppel, § 299; Freeman on Judgments, § 154; *Freeman* v. *Alderson,* 119 U. S. 185 (7 Sup. Ct. 165). It is apparent that under this rule the decree in question was not admissible in evidence to establish Ben Holladay's interest in the property, nor was it conclusive upon the parties to this action. The plaintiff was an en-

tire stranger to the proceedings. She had no right to appear in the suit or control the proceedings, or to appeal therefrom, nor is she claiming under or through either of the parties thereto. Whatever right she has in the property in controversy accrued and was fixed long prior to the commencement of the suit of *Holladay* v. *Holladay,* or the rendition of the decree therein, and is entirely independent of any interest of the Holladays. Nor is it sufficient that the defendant here is a party to both proceedings. Estoppels must be mutual, and unless the decree is binding upon both parties it is binding upon neither. "No person," says Mr. Freeman, "can bind another by any adjudication, who was not himself exposed to the perils of being bound in a like manner had the judgment resulted the other way": Freeman on Judgments, § 154. And Mr. Justice RUFFIN says in *Redman* v. *Coffin,* 2 Dev. Eq. (N. C.), 443: "A decree in favor of one party cannot protect another who was not a party unless he be a privy. And indeed a stranger thus introduced cannot use the decree at all, as such, because it cannot be used against him." And GIBSON, C. J., says: "That the record of a judgment can affect only parties and privies, and that no one shall have advantage from it who would not have been prejudiced by it, are principles with which every lawyer is supposed to be familiar": *Shulze's Appeal,* 1 Pa. St. 251 (44 Am. Dec. 126). See also 1 Herman on Estoppel, §§ 135, 136; Freeman on Judgments, § 159; Black on Judgments, § 548; *Carr* v. *Acraman,* 11 Exch. 568; *Henry* v. *Woods,* 77 Mo. 277; *Chamberlain* v. *Carlisle,* 26 N. H. 540; *Winston* v. *Starke,* 12 Grat. 317. Now, if by the decree in *Holladay* v. *Holladay* it had been adjudged that the defendant in this action was the owner in fee of the premises, and that Ben Holladay had no interest therein, it could not for a moment be successfully contended that such adjudication would be binding upon the present

plaintiff, and prevent her from showing by competent evidence, if she could, that Ben Holladay was in fact the real owner of the premises, and that Joseph Holladay was but a mortgagee in possession. If, then, such an adjudication would not have been binding upon her, certainly she cannot claim that the defendant is bound by the decree as actually rendered, in view of the rule that "nobody can take benefit by a verdict who had not been prejudiced by it had it gone contrary."

2.    It is argued for the plaintiff that the decree is admissible as a link in the chain of defendant's title, and to show the character of his possession.   But he is claiming by adverse possession alone, and not under a paper title, nor is his possession under or by virtue of the decree; and, besides, the record shows that it was not offered for any such purpose, but for the declared object "of showing that Ben Holladay was the real owner of the property in dispute, so far as the title stood in the Holladays, up to eighteen hundred and eighty-nine." For this purpose alone it was offered and used on the trial.   In other words, it was offered and admitted as conclusive proof of the statements contained in the decree, and of the facts upon the supposed existence of which it is based.   Under no rule of law of which we have knowledge was it admissible for that purpose.   A judgment is admissible in an action between strangers to prove the fact of its own rendition and the legal consequences which result from it, or when it forms a link in the chain of title of the party offering it; or when it characterizes the possession of one who claims under it, and perhaps in some other instances; but it is not admissible as proof of the statements contained therein, or the facts upon which the judgment was founded: Freeman on Judgments, § 416;  Black on Judgments, § 604. Even judgments *in rem*, which are generally said to be con-

clusive upon the whole world, are not always admissible as proof of the facts upon which they are based, except as against parties who were entitled to be heard before they were rendered: Bigelow on Estoppel, 47; *Brigham* v. *Fayerweather,* 140 Mass. 411 (5 N. E. 265); *DeMora* v. *Concha,* 29 Ch. Div. 268. In such cases it is said none but parties or privies are bound by the findings of fact contained in a judgment or decree, although they may be bound to admit the title or status which it establishes. The general principle is thus stated in Stephens' Digest of the Law of Evidence, Art. 42: "Statements contained in judgments as to the fact upon which the judgment is based are deemed to be irrelevant as between strangers, or as between a party or privy and a stranger, except in the case of judgments of courts of admiralty condemning a ship as prize." The case of *Lessee of Buckingham* v. *Hanna,* 2 Ohio St. 551, cited and mainly relied upon by plaintiff, does not seem to us to be in point here because the decree offered and admitted in that case operated to transfer the title of the property in controversy from one of the parties to the other, and was therefore admissible in evidence as constituting one of the muniments of title, the same as a deed or other conveyance would have been. The decree in the suit of *Holladay* v. *Holladay* did not transfer or purport to transfer title, but only to establish, as between the parties, the character in which Joseph Holladay held the title; and while it may have been admissible as proof of the authority under which the receiver executed the deed to Joseph Holladay in eighteen hundred and eighty-nine, if it was made in pursuance of this decree, and if the question was material, yet it was not admissible as evidence to prove the facts upon which it was based. It was only the fact, if material at all, that such a decree had been rendered, and the legal consequences thereof,

which could be thus proved. It could not be used as a medium of proving the matters of fact recited in it, or to charge the defendant in this action by reason of any fact found or proven in the suit in which it was rendered: 1 Wharton on Evidence, §§ 821, 822; 1 Greenleaf on Evidence, §§ 538, 539; 2 Phillipps on Evidence, page 6 and notes; Starkie on Evidence (10th ed.), *323; *Key* v. *Dent* 14 Md. 86. We think, therefore, the court was in error in admitting the decree in evidence for the purpose for which it was offered, and in giving it effect as evidence to establish Ben Holladay's ownership of the land.

3. It is next contended that the court erred in instructing the jury that the plaintiff, being a married woman at the time her right of action accrued, had fifteen years thereafter in which to bring her action; and, in refusing to instruct, as requested by the defendant, that her right of action was barred in ten years. In *Mitchell* v. *Campbell,* 19 Or. 198 (24 Pac. 455), and in *Stubblefield* v. *Menzies,* 8 Sawy. 41 (11 Fed. 268), it was held that under the statute a married woman has fifteen years in which to bring an action to recover real property, and we regard this as a correct interpretation of the statute. The exemption of a married woman from the operation of the ten years' statute of limitations, and allowing her five years additional time, is founded upon her marital relation, and not upon the idea that such relation prevented her from suing in her own name. As said by Mr. Justice DEADY, "it was because of her status as a married woman, which was supposed to disqualify or disable her from asserting her rights, and not for the reason that she therefore might not be permitted to sue alone": *Stubblefield* v. *Menzies,* 8 Sawy. 41 (11 Fed. 268).

4. If the married woman's acts of eighteen hundred and seventy-eight (Laws, 1878, pages 92–94,) and eighteen hundred and eighty (Laws, 1880, page 6,) removed all the

legal disabilities of a married woman,* as claimed by the defendant, they did not change her status or remove her marital disability, and so did not repeal or modify the statute of limitations. In the opinion of the legislature the status of a married woman is sufficient reason for allowing her not to exceed five years in which to bring the action, in addition to the time allowed persons not laboring under such disability, and this additional time is allowed because of her coverture, and not because she is disabled in fact from prosecuting the action.

5. It is next claimed that the court erred in instructing the jury that the delivery of the summons to the sheriff of Clatsop County, with intent that it should be served upon the defendant Malin, followed by service upon him seven days thereafter, stopped the running of the statute of limitations. The correctness of this ruling depends upon whether Malin was in possession of the property in controversy at the time the action was commenced, within the meaning of the statute which requires an action for the recovery of real property to be commenced against the party in the actual possession of the premises at the time, if they are in the possession of any one: Hill's Code, § 316. An attempt to commence an action is made equivalent to the commencement thereof, within the meaning of the statute of limitations, when the complaint is filed and the summons delivered, with the intent that it shall be actually served, to the sheriff of the county in which the defendants or one of them usually resides, provided the service is actually made or the first publication had within sixty days (Hill's Code, § 15); but this evidently contemplated that the defendant (against

---

*The act of eighteen hundred and seventy-eight has been incorporated into Hill's Code—both the first and second editions—as the following sections, the figures in parenthesis giving the number of the section in the original act, viz., 2992 (1), 2829 (2), 2870 (3), 2996 (4), 2871 (5), 2872 (6), 31 (7), 2873 (8), 2997 (9), 2874 (10). The act of eighteen hundred and eighty appears as sections 2998 (1) and 2878 (2).— REPORTER.

27 OR.—24.

whom the summons is lodged for service) shall be not merely a party to the record, but a proper party to the action, and, unless Malin was such a party, the fact of naming him in the pleadings as such will not avail the plaintiff for any purpose. The facts, about which there is no dispute, are that Malin, who resided in Portland, was temporarily in possession of the property in controversy at the time the action was commenced, as the mere servant or employé of Holladay, having been sent down a few days before to prepare the Seaside House for the reception of guests, and to act as manager thereof during the season, and that he claimed no interest in or right to the possession of the premises in any other capacity than as a mere hired servant or employé, subject to the orders and control of his employer. Under such circumstances it seems to us manifest that his possession was that of his employer, and that he was not a proper party to the action to recover possession of the premises. The person against whom the statute requires the action to be brought must be more than a mere agent or servant who claims for himself no interest in the premises or right to the possession or control thereof; but it must be some person in possession, exercising acts of ownership, and claiming title or right to the possession in himself. A person may be in possession of land either in person, or by some agent or servant acting under his direction and control; and in the latter case the possession of the agent or servant will be the possession of the employer, and he is the party against whom the action must be commenced, and not the agent or servant. "A mere servant or employé," says Chief Justice WALLACE, "claiming for himself no interest in the premises, nor any right to their possession, but acting under the control of another, and only in that manner occupying and being personally upon the premises, cannot be sued in an action of ejectment

brought to recover them, for such facts and circumstances only go to show that the employer, and not the servant or employé, is the party in possession, and, of course, answerable in that action: *Polack* v. *Mansfield*, 44 Cal. 39 (13 Am. 151); 1 Waite on Action and Defenses, 81; *Hawkins* v. *Reichert*, 38 Cal. 534; *Chiniquy* v. *Catholic Bishop of Chicago*, 41 Ill. 148; *People* v. *Ambrecht*, 11 Abb. Prac. 97; *Redfield* v. *Utica Railroad Company*, 25 Barb. 54. We think, therefore, the court erred in holding that the action was commenced when the complaint was filed and the summons served on Malin.

6.   In the course of the trial the court, in the presence and hearing of the jury, stated, in substance, that an adverse claim under color of title, to ripen into a perfect title, must be made in good faith, and with an honest belief on the part of the claimant that his title is good. The testimony of plaintiff tended to show that Ben Holladay, during the time defendant claims he was holding adverse possession of the property, had knowledge and was advised of plaintiff's claim, and her contention that the will under which Mrs. Cloutrie held was invalid as to her. In view of this testimony, and to remove any erroneous impression the jury may have received from the statement of the court, the defendant, at the proper time, requested in writing the following instruction, which the court refused to give, either in substance or as requested: "The fact that a person claiming under color of title knew he was wrong, does not affect the adverse character of his holding possession. A man may take and occupy under a will or deed which purports to give him title to the land, knowing that his title is bad, and that another has an outstanding interest in the land, yet his occupancy may be adverse; and so, though Ben Holladay may have known of the right of plaintiff, and have acted in bad faith in excluding her, yet, if his possession under his

deeds had the necessary element of an adverse occupancy in other respects, his knowledge that he was wrong would not affect the adverse character of his occupancy." This instruction should have been given. Counsel for plaintiff frankly admitted at the argument that the court was in error in stating that an adverse holding under color of title must be with an honest belief on the part of the part of the claimant that his title is good. This being so, the defendant was entitled, in view of the testimony, to have any erroneous impression the jury may have received from the remark of the court removed by a proper instruction, and for that purpose the instruction requested or a similar one should have been given.

7. The court also instructed the jury that the statute of limitations would not commence to run, as to the property conveyed by Mrs. Cloutrie to the defendant in June, eighteen hundred and seventy-seven, until the deed was recorded and the defendant entered into the actual possession of the property conveyed. This instruction wholly ignored the contention of the defendant that at the time the conveyance was made Mrs. Cloutrie was and for a long time prior thereto had been in possession holding adversely to the plaintiff, and therefore the statute commenced to run from the time the plaintiff was ousted by her, and not from the entry of the defendant. Mrs. Cloutrie entered into the possession of that portion of the donation land claim of her mother in controversy in this suit in eighteen hundred and seventy-two, under a will, regular in form, purporting to devise the whole of it to her, and thereafter remained in possession and treated the property as her own, sold and conveyed by warranty deeds the whole of definitely described portions thereof, mortgaged the remainder to secure the payment of her debts, and finally conveyed the mortgaged property to the defendant in satisfaction of the mortgage, and

delivered possession to him.   These were circumstances
of more or less importance indicating the assertion of a
claim of title and a possession inconsistent with and hostile to the title of the plaintiff as a tenant in common, and
was therefore evidence tending to show, and from which
the jury would have been justified in finding, an ouster
and adverse holding by Mrs. Cloutrie: Freeman on Cotenancy and Partition, §§ 224, 242; *Lefavour* v. *Homan,* 3
Allen, 354; *Carpenter* v. *Thayer,* 15 Vt. 552; *Wright* v. *Kleyla,*
104 Ind. 223 (4 N. E. 16).   And, while plaintiff gave testimony tending to show that Mrs. Cloutrie was holding
in recognition of her title, the question of ouster and adverse possession was, nevertheless, under the evidence, a
question of fact for the determination of the jury, and
the court was in error in assuming, — as it necessarily did
in the instruction complained of, — that Mrs. Cloutrie's
possession up to the time of the conveyance to the defendant was consistent with and in recognition of the
plaintiff's title.   Judgment reversed and new trial ordered.                                        REVERSED.