T. MAY et al. *vs.* ALFRED WILLIS, Bishop of Honolulu.

MANDAMUS.

HEARING, OCTOBER 20, 1890.   DECISION, OCTOBER 28, 1890.

JUDD, C.J., McCULLY, and DOLE, JJ. BICKERTON, J. did not sit.

The Charter of Incorporation of the "Anglican Church in Hawaii" contained the following section: "The trustees shall be presided over by the Bishop or his commissary, who may or may not be one of the trustees; provided, however, that in case of a vacancy of the See, or if there be no commissary especially authorized in this behalf, the Archdeacon may preside; and if there be no Archdeacon, the Senior Priest; and if there be no Priest, the trustees shall appoint their own president, and it shall be the duty of the said president to call a meeting on receiving a written request so to do from one third of the whole body."

Held, this section means that the presiding officer of the corporation for the time being, whether he is the Bishop, or his commissary, or the Archdeacon, or the Senior Priest, or the appointee of the trustees, is subject to the requirement of calling meetings at the written request of one-third of the members of the corporation. The calling of a meeting is a ministerial act and the presiding officer has no discretion in the matter, but must call the meeting upon receiving a legal request so to do, and not look to the object of the proposed meeting.

OPINION OF THE COURT, BY DOLE, J.

The petitioners are members of a corporation entitled "The Trustees of the Anglican Church in Hawaii," chartered by the Hawaiian Government. The respondent is the president of the corporation. The petitioners complain that the respondent has refused their written request that he would "call a meeting of the corporation in order that said corporation might consider, and if it should be deemed desirable and proper, decide upon the advisability of removing a building on said premises (the cathedral grounds near Emma street, in Honolulu), at present

in close proximity to the church building in course of construction for the Chinese congregation," giving as his reason for declining such request, "that the purpose for which the meeting was desired did not fall within the functions of said body." The complaint further alleges that the respondent "as president of the corporation is authorized and required by the charter of said corporation to call a meeting of said corporation upon receiving a written request so to do from one-third of the whole body;" and that such refusal "is without warrant of law, and wrongfully deprives the complainants, as members of the said corporation, of the opportunity to perform the duties entrusted to them."

An alternative writ was issued against the respondent and he filed his answer, admitting the request by the petitioners that he would call a meeting of the corporation, and his refusal to accede to the same for reasons given, and that the petitioners form more than one-third of the corporation. The answer "denies that he, as Bishop of Honolulu, is authorized and required by the charter to call a meeting of said corporation upon receiving a written request to do so from one-third of the whole body," and denies also "that said refusal is without warrant of law, and wrongfully deprives complainants, as members of said corporation, of the opportunity to perform the duties entrusted to them."

The charter of incorporation contains the following section : "The trustees shall be presided over by the Bishop or his commissary, who may or may not be one of the trustees; provided, however, that in case of a vacancy of the See, or if there be no commissary specially authorized in this behalf, the Archdeacon may preside; and if there be no Archdeacon, the Senior Priest; and if there be no Priest, the trustees shall appoint their own president, and it shall be the duty of the said president to call a meeting on receiving a written request so to do from one-third of the whole body."

The respondent, at the hearing as well as in his answer, claimed that this section applies only to the emergency of a vacancy in the See, when the trustees are authorized to appoint

their own president, whose duty it shall be to call meetings on the written request of a third of the corporation. We regard this as a forced construction of the sentence. The obvious meaning is that the presiding officer of the corporation for the time being, whether he is the Bishop, or his commissary, or the Archdeacon, or the Senior Priest, or the appointee of the trustees, is subject to the requirement of calling meetings at the written request of one-third of the members of the corporation. The proviso is very evidently parenthetical. Moreover, the construction claimed by the respondent would practically destroy the power given to one-third of the members of the corporation of calling meetings, for the contingency provided for when the corporation shall be without a bishop, commissary, archdeacon or priest is so remote that a right based upon it would be ordinarily of very little account. Nor is it conceivable why a distinction should be made in the charter between one kind of president and another as to their powers and duties of calling meetings. The respondent, however, accounts for this distinction upon the basis of a provision of the by-laws, whereby the power of calling special meetings is given only to the Bishop and his representatives, and it thereby became necessary to provide for special meetings in the contingency of the appointment of a lay president, who has no power given him by the by-laws to call special meetings. The argument has some plausibility, but less so to us than the counter argument that the section was framed to provide generally for calling special meetings on the motion of a portion of the members of the corporation, in addition to the right given to the Bishop and his representatives by the by-laws. If there was no provision for calling special meetings, the power would be inherent in a majority of the trustees; and the enactment in this charter, giving the power to one-third of the corporation, is a provision common in some similar form to corporations generally.

There is still another point in favor of our construction of this section of the charter, which has great force to our minds; and this is the construction which the Diocesan Synod, which is termed by the respondent the legislative body of the corpora-

tion, has adopted, as it appears to us, in their "Instructions to Trustees," adopted in 1889, which we find in the proceedings of the first session of the Third Diocesan Synod of the Anglican Church in Hawaii. The "instruction" we refer to is as follows: "Whereas, it is laid down in the charter that no conveyance or lease of real estate shall be made except at a meeting specially called for the purpose of deliberating upon the advisability of such sale or lease: It be our instructions to the trustees that such a special meeting be called by the president, and that a full week be allowed to intervene between the serving of the notice of such meeting upon all members of the board resident in the diocese and the day appointed for the holding of said meeting." This resolution certainly recognizes in the trustees the power of calling a special meeting through the president, and requests them that a special meeting be so called.

The respondent contends as a second ground why a peremptory writ should not issue, that although the charter may authorize a third of the corporation to oblige their president to call a meeting, it does not give them the right to oblige him to call a meeting for a particular purpose, as in this case. We have only to say on this point, that regular meetings of corporations are generally established by the by-laws, which are sufficient notice to all concerned of the time of holding them; the meetings, referred to in the section of the charter under consideration, belong to that class of corporation meetings generally known as special meetings, and it is a recognized rule in the law of corporations that the notice calling special meetings shall specify the object of the meeting.

The respondent offers a further ground against the issuing of a peremptory writ, which is substantially the reason given by him why he did not accede to the request to call a special meeting, as set forth in the complaint and admitted by him in the answer, *i. e.*, "that the purpose for which the meeting was desired did not fall within the functions of" the corporation. He has made an elaborate and learned argument upon this point, claiming, among other things, that the provision of the

charter which empowers the corporation to hold property, and directs that such property "shall be faithfully applied to the purpose and use of establishing and maintaining the Church of the Anglican Communion within the Kingdom of the Hawaiian Islands, according to the doctrines of the Church of England," etc., requires that the business of the corporation relating to its property shall be conducted according to the rules and principles of the Church of England relating to such matters of business, including within the meaning of the word "doctrines" the "entire body of principles by which the society is governed, as well with regard to the administration of its temporal concerns as to its articles of belief, its ministry, its ordinances, or its terms of communion." The respondent further contends in support of this point, that the proposed action is inconsistent with the regulations established by the Synod, to which the trustees are subject. Happily, the law applicable to the case makes it unnecessary for us to consider these points.

The decisive question in this contention is whether this official act of calling a meeting upon the written request of a third of the corporation is or is not a matter of discretion with the president of the corporation. We must find the answer to this question in the words themselves: "It shall be the duty of the said president to call a meeting on receiving a written request to do so from one-third of the whole body." These words are imperative; there are no other words to soften or modify them. We find no enactment of the Synod or rule of the Church of England which gives him such power as would qualify this enactment of the charter. The case of *Boyd vs. Phillpotts*, 4 L. R. Adm. & Eccl., 297, appears to deny to a bishop in England the extended powers claimed by respondent. We see no room for argument against our view on this point. The words need no construction, for they explain themselves beyond a doubt. The act, therefore, of calling a meeting under the circumstances is a ministerial or executive act, and is in no degree a judicial one; the officer has no discretion in the matter, but must call a meeting upon receiving a legal request so to do. This being the case it was not for the respondent to look to the object of

the proposed meeting, and, because he considered it illegal, to refuse to call it; the charter places no such responsibility upon him, and gives him no such discretion in the matter. The act of calling a meeting under such circumstances being purely a ministerial act, the president in calling it could not be regarded as having committed himself to any particular views relating to the object of the meeting, but would be as free at such meeting as any one else to combat or support any resolutions offered.

Neither is it for the Court to consider the object of the proposed meeting, for, having decided that the act in question is a ministerial one, all questions relating to the proposed business are foreign to the issue before this Court, which is without jurisdiction in the private affairs of the corporation, until its remedial interference is applied for from the standpoint of legal rights or obligations, to compel or prevent acts necessary or injurious to such legal rights and obligations.

The respondent, in a second brief filed after the trial, raises a point of law in the nature of a demurrer to the petition, to the effect that "if the corporation has been debarred of any inherent right or privilege it would rest with the corporation to complain," and not the petitioners, who are a small part of the corporation. This point is rather late in the case, and the petitioners have had no opportunity to meet it. We notice in this connection that it is not the corporation, but the petitioners, who, as a third of the corporation, have been debarred of a right which is affirmatively given to them by the charter.

A peremptory writ of mandamus may issue to the respondent, commanding him to call a meeting of the trustees of the Anglican Church in Hawaii, a corporation, forthwith, for the consideration of the advisability of removing the building in the cathedral precincts of the said corporation, at present in close proximity to the church building in course of construction for the Chinese congregation; and that respondent pay the costs of these proceedings.

*F. M. Hatch*, for petitioners.

Respondent, in person.