THE RIGHT REVEREND LIBERT HUBERT BOEY-
NAEMS, BISHOP OF ZEUGMA, *v.* MALIE K.
PAAHAO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 7, 1904.     DECIDED DECEMBER 27, 1904.

FREAR, C.J., HARTWELL AND HATCH, JJ.

NONSUIT—*when some essential evidence excluded, and other essential evidence not offered.*

When a plaintiff has rested, and much evidence essential to his case has been struck out or excluded, but other essential evidence has not been offered, a nonsuit may be ordered and the striking out or exclusion of the essential evidence is harmless.

CORPORATION SOLE—*Bishop of Catholic Church, not a.*

The Bishop of the Roman Catholic Church in Hawaii is not a sole corporation and cannot take by succession from his predecessor in office. To sustain ejectment, he must show a privity of title or estate between himself and his predecessor, if he claims under his predecessor, whether he claims by paper title or adverse possession.

OPINION OF THE COURT BY FREAR, C.J.

This is an action of ejectment for 85-100 of an acre of land situated at Kalihi, Oahu, covered by L. C. A. 10,498, R. P. 3546 to Nahinu, part of a lot containing 1 63-100 acres, originally enclosed by one stone wall and used, according to plaintiff's claim, for forty years or so as a site for a catholic church and a burying ground. The action was begun by the Right Reverend Gulstan F. Ropert, Bishop of Panapolis, but before the trial

his death was suggested and the present plaintiff, his successor in office, was substituted in his place.

At the close of the case the court, on defendant's motions, struck out much of the plaintiff's evidence and then ordered a nonsuit. The plaintiff brings the case here on an exception to the order of nonsuit and a number of exceptions to rulings striking out or excluding evidence.

It will not be necessary to consider these exceptions in detail or to set forth the various steps upon which the plaintiff relies in tracing his title from the original awardee or patentee. Probably the order of nonsuit would have been technically correct in view of the fact that the plaintiff's most important evidence was struck out, even if it would not have been correct in case that evidence had been allowed to remain, in which case we would be thrown back upon the question of the correctness of the rulings under which that evidence was struck out or excluded. On the other hand, if the order of nonsuit should have been made even if that evidence had not been struck out or excluded, the rulings on the evidence, even if that evidence was material and relevant as far as it went, would not be prejudicial or harmful to the plaintiff. The order of nonsuit was properly made if any link in the plaintiff's chain of title was missing—which, as we shall see, was the case. We may proceed on broader lines, as the plaintiff himself has done largely in his argument and brief.

The main difficulty in the case seems to have been to connect the present plaintiff with his predecessor in title. There is no dispute that the present plaintiff is Bishop Gulstan's successor in office, but was it shown that he was also his successor in title? It is contended that the predecessor in office had both a paper title, at least to some interest in the land, and also title by adverse possession. No evidence was introduced or offered to show descent or a devise or conveyance or even an oral transfer from Bishop Gulstan to the present bishop. It is contended that the plaintiff was not obliged to show any such connection between the two bishops after his case was practically destroyed

by striking out or excluding much of his material evidence, but that he may well rely upon his exceptions and the errors in the rulings already made. We cannot, however, take that view, at least when, as in this instance, the greater portion of such evidence was not struck out until both sides had rested. The order of nonsuit must be sustained if the entire evidence, both that admitted and that offered but excluded, does not show a case upon which a verdict for the plaintiff could be sustained.

We may assume for present purposes that even a parol transfer from one adverse holder to another would be sufficient to preserve a privity of estate or title between them and avoid an interruption in the continuity necessary to support a claim of title by adverse possession; in other words, that the successive possessions of several holders may be tacked together even though the connection between them rests solely in parol. We may go further for present purposes and assume that a parol transfer is sufficient to sustain an action by one claiming title by adverse possession even after the adverse possession of his predecessor has ripened into a good title by the expiration of the statutory period. We may also assume that, as is contended by the plaintiff, one may acquire title by adverse possession merely as trustee for the use and benefit of others and that for the purpose of acquiring title by adverse possession the successive possessions of persons claiming as trustees may be tacked, provided some privity of estate or title is shown between them so as to establish a continuity of possession, the contention in this case being that the bishops have held the property in question for the use and benefit of the Roman Catholic Church. It is absolutely necessary, however, whether a paper title or a title by adverse possession is relied on, that there be some privity of title or estate between the successive holders or claimants. In the present case, no privity having been established by descent, devise, conveyance or even parol transfer, the plaintiff must rely upon his remaining contention that the Roman Catholic Bishop is a corporation sole, in which case the title would pass by operation of law from each bishop to his successor in

office whether it is a paper title or a title by adverse possession. It is true that the quitclaim deed to Bishop Gulstan, which is relied on in part, was to him and his "successors in office," but the word "successors," as here used, is a word of limitation and not of purchase. The present bishop could not take under that deed by way of remainder. Nor could the parties to that deed by the mere use of other words of limitation change the devolution of the land from that prescribed by the statute of descent.

Several cases are relied on to show that the Bishop of the Roman Catholic Church in these islands is a corporation sole. The argument is that the common law is now in force here by enactment of the legislature except in certain cases, of which this is not one, and that by the common law a grant to a church was a grant to a parson and his successors in office to hold as a corporation sole for the benefit of the church. One case relied on is that of the *Town of Pawlet v. Clark,* 9 Cr. 292. Not to point out other distinctions between that case and this, it is sufficient to say that the court there held that a parson could take as a corporation sole with right of succession, for the use of the church, only in cases in which the church was licensed or authorized by the crown before the revolution or by the state after the revolution. The court said that "the church entitled, must be a church recognized in law for this particular purpose," and that a mere voluntary society of Episcopalians would not be so entitled. See also *Terrett v. Taylor,* in the same volume at page 43, in which, however, the decision was based partly upon statutes. Of course the conditions in both New Hampshire and Virginia, in which states those cases arose, were very different from what they are here. In those states the common law relating to the erection of churches of the Episcopal persuasion of England, the right to present to such churches and the corporate capacity of their parsons to take in succession, had long been recognized prior to the revolution. Another case relied upon is that of *Brunswick v. Dunning,* 7 Mass. 445, in which the court held that a Congregational minister of a town or parish was a corporation sole for the purpose of holding to

himself and his successors, in right of the town or parish, lands granted for the use of the ministry of the town or parish. But aside from the question of difference between the conditions then existing in Massachusetts and those existing now in Hawaii, that case may be explained by reference to an earlier case, that of *Weston v. Hunt,* 2 Mass. 500, in which it appears that by an early provincial statute, passed in the reign of George II., the ministers of the Protestant churches were made sole corporations capable of taking in succession, and that the provisions of that statute had been re-enacted by a statute of the commonwealth after the revolution. The remaining case relied upon is that of *Santillan v. Moses,* 1 Cal. 92, decided in 1850, in which it was held that a priest of the Catholic church could maintain an action in regard to mission land held previously under Mexican law on the theory that he was more than a mere naked agent and that his charge of the property was coupled with an interest and that his position was more nearly analogous to that of a sole corporation in England. This, so far as we are aware, is the only case that has gone to this extent. It was not based on the common law; the conditions under which it was decided differed greatly from the conditions here; and the view elsewhere generally seems to be that under conditions more nearly like those existing here bishops and priests of the Catholic church, as well as officers of other churches, are not sole corporations. Ordinarily in the United States ecclesiastical corporations, whether aggregate or sole, are created in pursuance of statutes and are regarded, like other corporations, as civil corporations and not as ecclesiastical corporations in the English sense. Bishops of the Roman Catholic Church seem to have been made corporations sole in some states by statute. See *Chiniquy v. Catholic Bishop of Chicago,* 41 Ill. 148, and *McCloskey v. Doherty,* 97 Ky. 300; 30 S. W. 649. In the latter case it does not appear clearly how far the statute went, but it is stated that the name of the corporation, which was the Roman Catholic Bishop of Louisville, had been changed by statute. In *Archbishop v. Shipman,* 79 Cal. 228, it was held that "Joseph

S. Alemany, Roman Catholic Archbishop of San Francisco" was a corporation sole, though whether by statute or not does not appear, but it was held that his successor could not recover land conveyed to "J. S. Alemany," that is, in his individual name, although it was purchased and improved by him as such archbishop with church funds and had been used solely for church and school purposes. As a rule bishops are not corporations except by statutory provision and the devolution of property from one bishop to his successor is usually effected by devise. *Baxter v. McDonnell*, 155 N. Y. 83.

It does not appear that the Bishop of the Roman Catholic Church in Hawaii has ever been created a corporation or even recognized as such by statute or judicial decision. Chapter 67 of the laws of 1886, in which a quitclaim of a piece of land that had been used by the Catholic church since 1839, was made and authorized to be made to the predecessor of Bishop Gulstan, seems to have been framed on the supposition that the bishop was not a corporation. Section 1 quitclaimed the land to "Hermann Kockemann, Bishop of Olba and Vicar Apostolic of the Hawaiian Islands, * * * in trust for the Catholic Mission of the Hawaiian Islands." Section 2 authorized the minister of the interior to execute a quitclaim deed of the land to "Hermann Kockemann in trust for the Catholic Mission of the Hawaiian Islands." There is no more reason here why the Bishop of a Roman Catholic church should be held a corporation sole as matter of law than there is why the bishop or pastor or other officer at the head of any other church should be so held. It has, we believe, been the usual practice for ecclesiastical bodies, desiring corporate powers, to incorporate under the provisions of the statute. This was done by the "Anglican Church in Hawaii." *May v. Willis*, 8 Haw. 178. See also *Pehu v. Kauai*, 3 Haw. 50, for an example of a Congregational church so incorporated. The general corporation law seems to imply, as far as it goes, that corporations of the character now in question should be created, if at all, under the provisions of the stat-

ute.  See C. L. Sec. 2025, for the chartering of corporations "either aggregate or sole, ecclesiastical or lay."

No evidence having been introduced or offered and erroneously rejected tending to show privity of title between the present plaintiff and his predecessor, and the bishop not being capable, as we hold, of taking by succession as matter of law on the theory that he is a sole corporation, the order of nonsuit must be sustained.  If there is any such evidence, as, for example, of a devise or a conveyance, which would show that the present bishop is the former bishop's successor in title in respect to this land, as well as his successor in office, the plaintiff will have to introduce it in some other action or proceeding.

The exceptions are overruled.

*Antonio Perry* and *T. McCants Stewart* for plaintiff.

*W. T. Rawlins* and *Thompson & Clemons* for defendant.