# CHARLES CHINIQUY et al.

## v.

# THE CATHOLIC BISHOP OF CHICAGO.

1. ACKNOWLEDGMENT OF DEEDS—*requisites of the certificate.* The certificate of acknowledgment of a deed purported to have been made by the clerk of the County Court, and was formal in all respects except in the omission in the caption or margin, of the name of the county. The certificate concluded thus: "Given under my hand and seal of said court, this 12th day of July, A. D. 1851," with the delineation of a seal containing the words "Will County Seal." *Held,* the omission of the name of the county in the caption was a mere informality which did not vitiate the certificate, it appearing sufficiently that the acknowledgment was taken by a proper officer of Will county.

2. NAMES — *variance therein.* In making out his chain of title in ejectment, the plaintiff gave in evidence a deed to *Mitchell Allen* and a deed from *Micheal Allaine,* insisting the names represented the same person. It was *held,* there was no variance. The names were French names, and the difference in spelling *Mitchell* and *Micheal* would result from giving the name the English or the French pronunciation. The names *Allan* and *Allaine* are *idem sonans.*

3. In the same chain of title there was a deed to *Otaine Allaine* and a deed from *Antoine Allain,* claimed to be to and from the same person, and it was held, there was not a fatal variance. These names were also French, and it was presumed there was proof below that *Antoine* took by a misnomer and conveyed by his right name.

4. In the use of foreign names in this country, courts should be slow to pronounce that a variance, unless it is palpable, which may only be a misspelling or a mispronunciation by persons ignorant of the language in which the name is written.

5. DESCRIPTION *of premises in a deed.* The description of land in a deed was as follows : "Being part of the south half of the south half of the southeast quarter of section number four, township number twenty-nine north, range twelve west of the 2d P. M., beginning at the north-west corner, thence south twenty-six rods, thence east sixty-one and one-half rods, thence north twenty-six rods, thence west to place of beginning, containing ten acres more or less." On objection that the place of beginning was uncertain, it was held the description was sufficient.

6. EVIDENCE — *in ejectment.* It is not competent, in an action of ejectment, to show who paid the consideration money on the conveyance of the premises to the plaintiff, with the view to establish a trust. In this action the legal title must prevail against every equity.

7. CONVEYANCE *to one for the use and benefit of another — right of the cestui que trust, at law.* In the premises of a deed, the party of the second part, to whom the grant was made, was described as follows : "The Right Rev. James

Oliver Vandervald, Bishop of Chicago, and his successor and successors in office, in trust for the use and benefit of the Catholic population of the parish of St. Anne, in the county of Iroquois, State of Illinois, party of the second part." *Held,* that the naming of the *cestuis que trust* in the premises, with the bishop as the party of the second part, did not operate to make them the grantees of the title equally with the bishop. The legal title vested in the bishop for their use.

8. CATHOLIC BISHOP OF CHICAGO, *as a corporation sole—requirements of the law creating such corporation.* Under the law constituting the Catholic bishop of Chicago a corporation sole, his titles to real estate do not become forfeited by reason of his omission to file for record a statement of his appointment under his hand and seal and verified by his affidavit, within three months after the act became a law, nor is the performance of that requirement of the act a prerequisite to the organization of such corporation.

9. EJECTMENT — *against whom the action will lie — who is an occupant within the meaning of the ejectment law.* Persons who are in possession of land merely as the servants or employees of the party claiming title adversely, are not occupants of the land, within the meaning of the ejectment law, and an action of ejectment cannot be maintained against them.

10. So a clergyman who preaches on Sunday, or any other day of the week, in a church edifice, under the direction and employment of a religious corporation, is not liable to an action of ejectment, and to be mulcted in costs, at the suit of a person claiming the title against the corporation.

11. CORPORATION — *its organization — in what proceeding it can be inquired into.* Where an action of ejectment is brought in the name of a party, as a corporation, matters relating to the organization of such corporation cannot be inquired into in such action. In a direct proceeding by *quo warranto,* proofs relating to its organization might be required.

APPEAL from the Circuit Court of Kankakee county; the Hon. CHARLES R. STARR, Judge, presiding.

This was an action of ejectment commenced in the court below, by the Catholic Bishop of Chicago, against Charles Chiniquy, Achilee Chiniquy, Augustine Fouche, Pierie Morais, Gustave Demars, Lewis Mercier and Abram Peltier, a trial of which resulted in a verdict and judgment for the plaintiff. The cause is brought to this court for review by the defendants.

Among other questions arising upon the record, is one in regard to the validity of the deed from Antoine Allain and wife to the plaintiff. The portions of that deed to which objection is taken, are as follows: "This indenture made this

twenty-sixth day of March, in the year of our Lord one thousand eight hundred and fifty-two, between Antoine Allain and Marcelline Allain, his wife, of the county of Iroquois, State of Illinois, party of the first part, and the Right Rev. James Oliver Vandervald, Bishop of Chicago, and his successor and successors in office, in trust for the use and benefit of the Catholic population of the parish of St. Anne, in the county of Iroquois, State of Illinois, party of the second part," then follows the grant to "the said party of the second part, his successors and assigns forever." The question presented is, whether the naming of the "Catholic population of the parish of St. Anne," in the premises of the deed, with the bishop, as party of the second part, constituted them the grantees in the deed equally with him, so as to vest in them the legal title.

The facts upon which the other questions in the case arise are sufficiently stated in the opinion of the court.

Mr. WALTER B. SCATES, and Messrs. GLOVER, COOK & CAMPBELL, for the appellants.

Messrs. ARRINGTON & DENT and Messrs. MOORE & CAULFIELD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The Catholic bishop of Chicago brought his action of ejectment in the Circuit Court of Kankakee county against Charles Chiniquy and others, to recover the possession of part of the south half of the south half of the south-east quarter of section four (4), in town twenty-nine (29), range twelve (12), west of the second principal meridian, in the county of Kankakee.

The defendants pleaded the general issue and also a plea denying they were in possession of the premises, and there was a verdict and judgment for the plaintiff, to reverse which the defendants have appealed to this court.

The record shows, that the south-east quarter of section four was patented by the United States to George W. Cassidy.

By deed dated July 12, 1851, Cassidy and wife conveyed the land to one Mitchell Allen.

One *Michael Allain* conveyed the south half of the south half of this quarter, on which are the premises in controversy, to one *Otaine Allaine*. One *Antoine Allain* and Marcellain Allain, his wife, conveyed ten acres of the same to the Right Reverend James Oliver Vandervald, Bishop of Chicago, and his successors in office, by metes and bounds, in trust for the use and benefit of the Catholic population in the parish of St. Anne, in the county of Iroquois. Thus was deraigned the title of the plaintiff.

It was stipulated on the trial of the issues, that there was at St. Anne, an incorporation of a religious society, by the name of the Christian Catholic Church at St. Anne, incorporated under the general law of this State. That said society is a Protestant religious association, not in communion with the Roman Catholic Church, or having any connection therewith. That the defendant, Charles Chiniquy, for the last five years has been the minister of said religious society, incorporated as aforesaid, and regularly officiated in the building which stands upon the premises in controversy, and continuing to, up to the present time; that prior to April 11th, 1864, for the preceding five years, he kept a stable on a portion of the premises sought to be recovered, and kept his horses and stock there in said stable; that prior to the commencement of this action he removed his stable and stock off of the said premises. That the other defendants are the trustees of said society, with the exception of Gustave Demars, and that the said trustees have the control of said premises, and employed the said Chiniquy as the minister of said church, and Gustave Demars as a teacher, and that he has taught a school in said building, from a time prior to the commencement of this suit until now, and that such possession and control of said trustees, is adverse to the plaintiff, and that the possession and control of said Chiniquy and said Demars (if any) is under said trustees, and is also adverse to the plaintiff.

There was no evidence of title in the defendants, to the

premises in question, except the possession mentioned in the stipulation.

The jury, under instructions from the court, found a verdict in due form for the plaintiff, on which the court rendered judgment, to reverse which the defendants prosecute this appeal, and have assigned the following errors : The court erred in admitting improper evidence offered by said plaintiff in the court below; in refusing to admit proper evidence offered by defendants ; in giving to the jury the instructions asked by said plaintiffs, and each of them ; in refusing to give the instructions asked by said defendants, and each of them ; in overruling the motion for a new trial, and in rendering judgment in manner and form aforesaid.

Various points are made by appellants, on this assignment of errors, the most material of which we will notice.

The defendants objected to the admission of the deed in evidence, of Cassidy the patentee, to Mitchell Allen, for the reason, there was no acknowledgment of its execution, and the same was not proved.

The defect, in the acknowledgment, consists in the omission, in the caption, of the name of the county. It purports to have been taken by Oscar L. Hawley, clerk of the County Court, and is formal in all respects save this omission. The conclusion of the certificate of acknowledgment is as follows : "Given under my hand, and seal of said court, this 12th day of July, A. D. 1851," with the delineation of a seal containing the words, "Will county seal." It must be admitted that this acknowledgment is informal, but it is nothing more.

It is perfectly certain the deed was acknowledged before the county clerk of Will county, and it is so attested under the seal of that county. Naming the county in the margin would scarcely make it more certain. We do not think any appeal to the confirmatory act of 1853, is necessary to sustain this certificate, as the fact is patent by it, that the acknowledgment was taken by a proper officer of Will county.

It is next objected, that as this conveyance by Cassidy and wife is to Mitchell Allen, he only, and not Micheal Allaine,

could convey the premises described in it; and the same objection is made to the deed from Micheal Allaine to Otaine Allaine, and from Antoine Allaine to the plaintiff in the action. The objection, as appears by the record, was, "that the name of the grantee in the first deed and of the grantor in the second deed was not the same; and the name of the grantee in the second deed and grantor in the third was not the same. Some evidence was introduced by plaintiff, tending to show that the name was French, and was variously spelled and pronounced, which was objected to by the defendants; whereupon the deeds were handed to the court for inspection. The court held there was no variance which should exclude them from the jury, and permitted them to be read to the jury, as showing a chain of title."

We do not profess to be skilled in the French language, but, from our slight knowledge of it, we are satisfied the names of the parties to the second and third deeds are French names. Being such, when pronounced by one familiar only with English names, he would give them an English pronunciation, and thus convert, by the simple act of pronunciation, "Micheal Allaine" into "Mitchell Allen;" and a Frenchman pronouncing the name of Mitchell Allen, would pronounce it as Micheal Allaine, since the pronunciation of the French *prænomen* "Micheal" is "Meshale," quite like the English name "Mitchell," while Allen and Allaine are *idem sonans*, or so nearly so as not to constitute a variance.

So with the name "Otaine Allaine." This is evidently a French name, and it is apparent Antoine Allaine took under it, for he made the deed to the plaintiff. He took the premises by a misnomer, but conveyed them by his right name. Of this there is no question. What evidence was before the court on this point, we are not apprised, but we are bound to suppose it was sufficient to satisfy the court there was no variance.

When we consider the great influx of foreign population into our country, and the great difficulty existing on the part of those courts as well as the people generally, who are not famil-

iar with the language of the country from which it comes, to understand the names, whether written or spoken, by which they are severally distinguished, we should be slow to pronounce that a variance in the name of any one of them, unless it is palpable, which may only be a misspelling or a mispronunciation of it, and that by persons ignorant of the language in which the name is written. Apart from any suggestion of fraud or personation of another, which is not claimed in this case, it is evident under Cassidy's deed, Micheal Allaine took and held the premises unquestioned by any one, and under his deed to Otaine Allaine, Antoine Allaine took and held in the same way, his right being unchallenged, and he conveyed them by that name to the plaintiff in the ejectment.

We cannot think, under the circumstances, there was such a variance in the names in these deeds, as to exclude them as evidence, and the more especially in this case, since by the import of the stipulation in it, the defendants claim whatever title they may have, under the same deeds. This appears from the record, for that shows that " Antoine Allaine was introduced as a witness by the defendants, who offered to prove by him that the consideration of twenty-five dollars named in the deed to the plaintiff, was not paid by him, but by the defendants ; and they also offered to prove by this witness that he refused to execute a deed to the bishop for the use of the religious society or congregation of Roman Catholics of St. Anne, but executed the deed in evidence instead of such deed which was furnished to him to execute. The defendants also offered to prove, that, at the time this deed was made, the defendants were members of the Catholic church of St. Anne, but the court refused to permit the defendants to make such proof."

It is next objected that this deed from Antoine Allaine to the plaintiff is void for the uncertainty in the description of the piece of land conveyed.

The description in the deeds, in the declaration, in the verdict of the jury, and in the judgment of the court, is one and

the same, and it is as follows : " Being part of the south half of the south half of the south-east quarter of section number four, township number twenty-nine north range twelve west, of the 2d P. M., beginning at the north-west corner, thence south twenty-six rods, thence east sixty-one and one-half rods, thence north twenty-six rods, thence west to place of beginning, containing ten acres, more or less."

It is said the place of beginning is uncertain. We do not so think. The land out of which this parcel is to be taken is described as the south half of the south half of the south-east quarter, which would contain, by government survey, forty acres. It is out of this forty acre tract the ten acres are to be taken, and the beginning corner of the survey is the north-west corner of this forty-acre tract, which is the south half of the south half of the quarter section.

This is the tract described as the tract out of which the ten acres are to be taken, by beginning the survey at its north-west corner. This seems to us quite plain.

It is next objected that the court rejected evidence to show who paid the consideration money for this piece of land.

We are not of opinion that proof to establish a trust could be gone into in this action to any greater extent than the deed itself might disclose, and, therefore, it was wholly immaterial who paid the consideration. That may be the subject of future inquiry by a court of chancery. It is sufficient for this action, that, by the deed of Antoine Allaine, the plaintiff was vested with the legal title, and being so vested, it must, at law, prevail against all and every equity.

We do not appreciate the force of the objection under the fourth point made by appellant's counsel. It is this : "Where a grantee is omitted in the premises of a deed, the grant is void for uncertainty." But the name of the grantee is not omitted in the premises of this deed. We suppose the counsel means to say, that, inasmuch as the Catholic population of the parish of St. Anne are named in the premises, with the plaintiff as the party of the second part, they became the grantees of the title equally with the bishop. As we construe the deed, the

grant is made to the bishop of Chicago, and his successors in office. He and they take, by the terms of the deed, the legal title, and are the party of the second part, but they take it in trust for the use and benefit of the Catholic population of the parish of St. Anne, in the county of Iroquois. The plaintiff, and his successors in office, are the trustees for this population, for whose use and benefit he now holds it, and on his removal or death, his successor will hold it, for the same use and benefit, and this, independent of any statute. But, by the act of February 24, 1845, the legal title, and an estate in fee simple, were vested in the plaintiff, and his successors in office forever, and in no other person or persons. Scates' Comp. 984.

Whatever, then, may be the rights of these beneficiaries under this deed, they cannot be asserted in a court of law, and cannot prevail against the legal title.

The fifth point made by appellants has no force, since, so far as this grant is concerned, the plaintiff had no predecessor in office, and, of course, there could be no release. This grant is made directly to James Oliver Vandervald, bishop of Chicago, and the suit is brought by the Catholic bishop of Chicago, as a corporation sole, so erected and constituted by the act of February 20, 1861. By section four of that act, it is provided, that real estate intended to be vested by the act of 1845 above cited shall vest in the Catholic bishop of Chicago, and likewise, that gifts, grants, deeds, etc., heretofore made to any bishop shall be construed as conveying the property to such person as the Catholic bishop of Chicago, and that the title shall vest in this corporation sole. Private Laws, 1861, p. 78.

Although this act required the Catholic bishop of Chicago, within six months after his appointment to office, to file for record a statement of his appointment, under his hand and corporate seal, and verified by his affidavit, and that the then Catholic bishop of Chicago should comply with such requisition within three months after the act became a law, it nowhere declares his titles shall be forfeited if he does not do these things, nor do we conceive the last provision was designed as a prerequisite to the organization of the corporation of which

he was the head. In this action, these matters cannot be inquired into. On a direct proceeding by *quo warranto*, such proof might be demanded, and, in its absence, the corporation might be dissolved. It cannot be assailed in this collateral proceeding.

It is also objected, that the instructions given on behalf of the plaintiff were improper, and should have been refused, and those given as asked by the defendants.

We have examined carefully, the instructions for the plaintiff, and find no substantial objection to them.

As to the defendants' instructions, we are of opinion they were all properly refused, except the last, which should have been given. It is as follows:

" The court instructs the jury for the defendants, that, if they believe from the evidence, that, at the time of the commencement of this suit, Charles Chiniquy and Gustave Demars only occupied the premises for the purposes of a minister to conduct public worship, and as a school teacher, and that they so occupied the premises in the employ of the society or corporation known as the Christian Catholic church at St. Anne, and under their direction, and had no other nor further possession or control of the premises, and that the trustees of said corporation or society had the actual possession of the property, then the plaintiff can not recover in this suit against Chiniquy and Gustave Demars."

This instruction excludes the idea that Charles Chiniquy and Gustave Demars were in possession of the premises as tenants of the trustees, but is drawn on the hypothesis that they were merely their servants or employees performing their daily or weekly tasks upon the premises, and not the occupants in the sense of the ejectment law. It puts a case which, if believed by the jury, would no more render Chiniquy and Demars liable to an action of ejectment, than would be the cashier and teller of a bank, if a suit was brought against the banking corporation to recover possession of the banking house. It surely cannot be said, that a clergyman who preaches on Sunday, or any

other day of the week, in a church edifice, under the direction and employment of a religious corporation, is liable to an action of ejectment, and to be mulcted in costs at the suit of a person claiming the title against the corporation. Nor is the hypothesis on which this instruction is drawn excluded by the stipulation in the cause, for that does not admit possession by Chiniquy and Demars. It is only on the ground that they are in possession, that such possession is admitted to be adverse to the plaintiff, leaving the question of possession debatable. The facts do not show it existed in them, but in the trustees by whom they were employed. As well might the claimant of a farm, bring his action against the men employed to cultivate the farm by the occupant in adverse possession. The action would not lie against such employees, they not being occupants in the sense of the ejectment law.

Refusing to give this instruction was error, and for the error the judgment must be reversed and the cause remanded.

*Judgment reversed.*