WILLIAM I. DE GARMO *v.* HART PRATER *et al.*

(*Nashville.* ˸December Term, 1911.)

1. **EJECTMENT.** Maintainable against actual occupant, though mere unknown servant of adverse claimant, prevents bar of statutes ˙of limitations in favor of such adverse claimant made a party defendant by· amendment.  ·

Under the statute (Shannon's Code, sec. 4972), authorizing· ejectment against the actual occupant, ˙if any, and if no such occupant, then against any person claiming an interest therein, or exercising acts of ownership, an action of ejectment may be maintained against one in actual possession as the mere servant, agent, or employee of ˙a third person, where such suit was instituted by a claimant having no knowledge of the actual relationship; and such suit stops the operation of the statutes of limitations, so that complainant, upon·· obtaining knowledge of the relationship, may make the third person a party defendant to the suit, and such new defendant cannot rely upon the seven year statute of limitation as a bar, where the statute had not formed a bar when the suit was originally instituted. (*Post, pp.* 501-523.)

˙Code cited and construed:  Sec. 4972 (S.); sec. 3955 (M. & V.); sec. 3231 (T. & S. and 1858).

Cases cited and approved:  Colcord v. Hall, 3 Head, 625; Tindal v. Wesley, 167 U. S., 204; Chatard v. O'Donovan, 80 Ind., 28; Doe v. Stradling, 2 Starkie (Eng.), 187; Shaver v. McGraw, 12 Wend. (N. Y.), 558; Lucas v. Johnson, 8 Barb. (N. Y.), 244; Hennessey v. Paulsen, 147 N. Y., 255; Hawkins v. Reichert, 28 Cal., 534; Polack v. Mansfield, 44 Cal., 36.

Cases cited, reviewed, and distinguished, or disapproved: Chiniquy v. Catholic Bishop of Chicago, 41 Ill., 148; Danihee

125 Tenn.—32

De Garmo v. Prater.

v. Hyatt, 151 N. Y., 493; Lattie-Morrison v. Holladay, 27 Or., 175; Hawkins v. Reichert, 28 Cal., 534; Polack v. Mansfield, 44 Cal., 36; Shaw v. Hill, 83 Mich., 322; Hendricks v. Rasson, 49 Mich., 83; Mead v. Owen, 80 Vt., 273, 278; Davis v. Williams, 130 Ala., 530; Haywood v. Miller, 3 Hill (N. Y.), 90; Kerrains v. People, 60 N. Y., 226; Bowman v. Bradley, 15 Pa., 351; Hughes v. Overseers, 5 M. & G., 54; King v. Stock, 2 Taunt., 289.

2. **SAME. Same. Complainant will not be required, at his peril, to know whether actual occupant is a tenant or mere servant.**

Where the relation of master and servant merely is apparent and unquestioned, and the master is subject to suit, there is no practical inconvenience in the administration of the rule that the claimant cannot maintain ejectment against such servant or employee; but where the solution of the question as to whether the person in occupation of the land is in fact a tenant of a third person not in possession or occupancy, or merely his servant, agent, or employee, depends upon a disputed state of facts, there would always be great inconvenience in applying, in ejectment cases, the rule that would, in such cases, prevent the maintenance of the action against such occupant, and such rule will not be adopted and applied in this State, notwithstanding the decisions of other States. (*Post, pp.* 517-520, 522, 523.)

3. **SAME. Same. Same. Claimant may maintain ejectment against occupant ostensibly controlling the land, regardless of his relation to others.**

It has always been understood in this State that the owner, or the person claiming to be the owner, might maintain ejectment against the occupant on the land, and ostensibly controlling it, no matter who he might be, or in what relation he stood to any other person; and this is regarded as the only safe rule. (*Post, p.* 520.)

De Garmo v. Prater.

4. **SAME.  Occupant ostensibly controlling land may be sued; occupancy by possession.**

The occupant is the person on the land and ostensibly controlling it.  There may be a possession without actual bodily occupancy, as where one has built a house upon land and has locked the doors or has inclosed a field and has maintained his inclosures. This may be considered a form of occupancy, and, at all events, it is a possession, and it has been held in this State that suit may be brought against the party maintaining such possession or form of occupancy.  (*Post*, p. 520.)

Code cited and construed:  Sec. 4972 (S.); sec. 3955 (M. & V.); sec. 3231 (T. & S. and 1858).

5. **DEEDS OF CONVEYANCE.  Deed appearing to be written on back of State's grant as shown by their juxtaposition on the registration book, and thus identifying land conveyed.**

Where, following the registration of the State's grant in the county register's office, there appears a registered writing purporting to be a deed, referring to the maker thereof as "the grantee in the within grant," and conveying to the grantee (named) "the within named tract of land containing five thousand acres, and described as therein mentioned," it is clear, from the connection of the two papers, that the deed was written upon the back of the grant, and referred to the land therein described as the land conveyed; and this conclusion is reached upon the foregoing matter, although the State's original grant was not before the court so that the court could see actually written upon its back the deed made by such grantee. (*Post*, pp. 523-531.)

6. **SAME.  Certificate of copies of State's grant and of grantee's indorsed deed that is sufficient to make them admissible in evidence.**

Under the statute (Shannon's Code, secs. 567, 5573, and 5576), making certified copies of public records (including books of the registers) admissible in evidence, etc., a certificate of a county register is sufficient to render the copies of a grant and deed

admissible in evidence where the certificate follows what purports to be a copy of the State's grant of land and a deed from the grantee, appearing on the register's book immediately after the grant, and held to be written on the back of the grant, as shown in the preceding headnote, which certificate recites that the foregoing grant and certificates are correct copies of a grant and certificate as the same appear of record in his office in a designated book and page. (*Post, pp.* 523-531.)

Code cited and construed: Secs. 567, 5573, 5576 (S.); secs. 529, 4541, 4544 (M. & V.); secs. 454, 3791 (T. & S. and 1858).

---

FROM SEQUATCHIE.

---

Appeal from the Chancery Court of Sequatchie County.—T. M. McCONNELL, Chancellor.

HILL & CAMP, for complainant.

L. N. SPEARS, G. B. MURRAY, and F. H. MERCER, for defendants.

---

MR JUSTICE NEIL delivered the opinion of the Court.

The complainant filed his ejectment bill, claiming title and right to possession of 2,500 acres of land described therein. The defendant Rocky River Coal & Coke Company claims title and possession of 600 acres of the land described in the bill.

Complainant bases his right upon grant No. 3,375, issued by the State of Tennessee on July 29, 1834, to one Henderson Pope, from whom he deraigns title through a series of intermediate conveyances and descent cast.

The defendant Rocky River Coal & Coke Company claims under a grant issued to Abner Fletcher, No. 4,177, dated September 26, 1837.

There is an interlap of about 600 acres between the two grants, and this is the land in controversy.

1. It is insisted that, regardless of whether the complainant has established title, he cannot recover, because his suit was not brought against the Rocky River Coal & Coke Company until seven years had elapsed from the time the said company entered into adverse possession of the land; and the fact is that the Rocky River Coal & Coke Company was not made a defendant until after the lapse of seven years. But complainant brought his suit within six years against defendant Hart Prater. It is claimed, however, in behalf of defendant Rocky River Coal & Coke Company that the institution of the suit, at that time, was ineffectual to stop the running of the statute of limitations, because Hart Prater was a mere servant or employee of the said company, and not a tenant under it.

The fact is that D. L. Hasten, through whom the Rocky River Coal & Coke Company claims title, placed Hart Prater on the land to hold for him under a contract that Prater was to receive, in payment for such service, the sum of seven dollars per month, and, in addition, he was allowed to cultivate the land, and take the proceeds of such tillage. After Prater had remained upon the land for several years under this contract, Hasten sold the land to J. M. Overton, trustee, and he continued Prater on the land at eight dollars a month and

the use of the land.   J. M. Overton, trustee, sold the land to the Rocky River Coal & Coke Company, and it continued Prater on the same terms.   Prater remained on the land, under this contract, cultivating it, for about six years.   He built a dwelling house and barn on the land, and also fenced in a lot around the house and barn. The materials for the house, barn, and fence were furnished by D. L. Hasten.   He entered upon the land in this way somewhere between April 1 and July 1, 1901, and was on the land when the original bill was filed, February 2, 1907.   The persons made defendant to the original bill, besides Hart Prater, were D. L. Hasten, J. D. Raht, J. M. Goodbar, and J. M. Overton.

On the 4th of March, 1907, the defendants filed a petition for removal of the cause to the federal court.   It appears to have been removed to that court, and then to have been remanded to the chancery court some short time prior to March 9, 1909, on which latter date defendant Hart Prater filed his answer.   In this answer he admitted that at the time of the filing of complainant's bill, and for some time prior thereto, he had been "in the possession, use, and enjoyment of said land, and the rents and profits thereof, holding and claiming the same as the tenant of the Rocky River Coal & Coke Company;   . . .   that he had not entered on the land, save only as such tenant, and he was holding as such tenant for the said Rocky River Coal & Coke Company under the title held and possessed by said company." This answer averred that the lands were granted lands, and that the Rocky River Coal & Coke Company, and those

under whom it claimed, had been in adverse possession under an assurance of title purporting to convey an estate in fee simple for more than seven years before complainant's bill was filed. He thereupon set up in defense said statute of limitations.

On May 14, 1909, the complainant filed an amended bill, in which he brought the Rocky River Coal & Coke Company before the court as a defendant, on the strength of the statement in the answer of Hart Prater that he was holding as tenant of that company. D. L. Hasten, J. D. Raht, J. M. Goodbar, and J. M. Overton, who were made defendants to the amended bill, answered, disclaiming any interest in the property. Hart Prater answered, saying that since his answer was filed to the original bill he had ceased to be a tenant of the Rocky River Coal & Coke Company, and had moved away from the land. The Rocky River Coal & Coke Company filed its answer, denying the title of complainant, and pleading the statute of limitations of seven years.

It thus appears that at the time the original bill was filed Hart Prater had been in occupation of the land for about six years. During the time the case was in the federal court, and before Hart Prater's answer was filed, seven years had elapsed from the time that Hart Prater first entered upon the land, and the Rocky River Coal & Coke Company was made defendant later.

As it appeared to the public, Hart Prater was in possession of the land, living in a house within an inclosure thereon; and the land was in a remote and

sparsely settled portion of the country. Complainant, not knowing the relation which Prater sustained to the Rocky River Coal & Coke Company, brought suit against him as an occupant of the land, and now claims that, having brought this suit within seven years of the time that Hart Prater entered upon the land, the statute of limitations was arrested. The defendant insists that Hart Prater was merely a servant, placed upon the land by his master to live there, to keep the fences up around the inclosure, and to keep trespassers off, for which he was to receive the compensation per month already stated, and be permitted to take the crops from so much of the land as he might till. Hart Prater himself admitted that he occupied the relation of tenant, and so testified Hasten and several other witnesses of the defendant—indeed, practically all of the witnesses of the defendant. One of the witnesses, who was the general counsel for the Rocky River Coal & Coke Company, testified that he had seen, and had had in his possession, the written lease; but it had been lost, and he could not now produce it. The defendant introduced two of the witnesses a second time, who testified that Hart Prater was a servant, and not a tenant; but they admitted that they had not known the terms of the contract under which he went upon the land. The defendants insist that, no matter what the witnesses may have said as to the relation of landlord and tenant, still under the facts proven as to the service which Hart Prater was to perform, and the compensation he was to receive therefor, he was in law a mere servant, and not a tenant.

It is insisted by defendant, as matter of law, that the occupant must hold for himself, or under some other as tenant; that a servant or employee merely cannot be sued as occupant. Many authorities are cited to sustain this position. It is stated in 15 Cyc., p. 85, that according to the weight of authority persons in possession of land merely as servants or employees of the party claiming title adversely are not occupants or tenants in possession of the land, within the meaning of the ejectment law, and that an action in ejectment cannot be maintained against them—citing *Polack* v. *Mansfield*, 44 Cal., 36, 13 Am. Rep., 151; *Hawkins* v. *Reichert*, 28 Cal., 534; *Chiniquy* v. *Catholic Bishop*, 41 Ill., 148. But in a note it is said that the rule is subject to the limitation that such a party may be treated as an occupant and sued as such where the employer, for any reason, is not amenable to an action.

In Warvelle on Ejectment, sec. 108, it is said:

"While the subject is not altogether free from doubt, the better opinion would yet seem to be that, where a person is in the actual occupation of the land only as an incident of his employment, he is not to be regarded in the same light as a tenant, and his possession is more like that of a servant. And where the occupation of land by a servant is connected with the service, or is required by the employer for the necessary or better performance of the service, the possession is always that of the master. *Chatard* v. *O'Donovan*, 80 Ind., 28, 41 Am. Rep., 782. This raises some interesting questions in an action brought for the recovery of the land. It is a rule, both

of the common law and of the statute, that if the premises, for the recovery of which the action is brought, are actually occupied by any person, such occupant shall be named as defendant in the suit. The rule is broad enough to embrace every kind of occupancy, and if literally construed would include persons who are in the nominal possession of land merely as servants or employees of the adverse claimant. And this was the construction given to it in the earlier decisions. *Doe* v. *Stradling,* 2 Starkie (Eng.), 187. And see *Shaver* v. *McGraw,* 12 Wend. (N. Y.), 558.

"Modern authorities reverse this holding, and announce that such persons are not to be regarded as occupants within the meaning of the law, and, notwithstanding such occupancy, the rule at present would seem to be that an action of ejectment cannot be maintained against them. *Chiniquy* v. *Catholic Bishop of Chicago,* 41 Ill., 148; *Danihee* v. *Hyatt,* 151 N. Y., 493, 45 N. E., 939; *Lattie-Morrison* v. *Holladay,* 27 Or., 175, [39 Pac., 1100]; *Polack* v. *Mansfield,* 44 Cal., 36. At all events, mere employees of the defendant, who have simply been permitted to reside upon the lands in controversy at the time suit is brought, and who claim no rights or interest therein, are not necessary parties defendant. *Shaw* v. *Hill,* 83 Mich., 322, [47 N. W., 247], 21 Am. St. Rep., 607; *Danihee* v. *Hyatt,* supra.

"The general rule, that ejectment must be brought against the party really interested in the possession, and not against the mere agents or employees by whom his occupancy is maintained, only applies, however, to cases

where the principal or employer may be sued. If the employer is not amenable to an action, the rule fails, and the agent, servant, or employee becomes the proper party defendant. Thus, ejectment may not be brought against the United States, but will lie against an agent or officer of the United States in possession. See *Polack* v. *Mansfield,* supra."

In *Hanson* v. *Armstrong,* 22 Ill., 442, it was held that it was not necessary to make any other party than the occupant a defendant. In *Hendricks* v. *Rasson,* 49 Mich., 83, 13 N. W., 367, it appeared that a man let his son have money toward buying a farm and lived with him on it, working all over it, receiving a certain proportion of the crops, and occupying certain rooms in his house, exclusively, claiming a right to remain on the premises. It was held that these facts did not in themselves make it necessary to implead him as a joint defendant, with his son, in an action in ejectment; further, that a defendant in ejectment cannot, for the purpose of defeating the action, rely on the non-joinder as defendant of any person occupying the premises with him under a claim of right that is merely subordinate to and wholly inseparable from his own possession. In *Shaver* v. *McGraw,* supra, it was held that ejectment for premises occupied and possessed by a servant, although he claimed no beneficial interest, must be brought against such servant. In *Lucas* v. *Johnson,* 8 Barb. (N. Y.), 244, it was held that if there be an actual occupant he must be named as defendant in ejectment; that, if the premises are actually occupied, it is immaterial who

claims to be owner. In New York, under Code Civ. Proc., sec. 1502, providing that, if the land is occupied, the occupant must be made defendant, it was held that it was not necessary that all the occupants should be made defendants. *Hennessey* v. *Paulsen,* 147 N. Y., 255, 41 N. E., 516. In *Tindal* v. *Wesley,* 167 U. S., 204, 17 Sup. Ct., 770, 42 L. Ed., 137, it was held that an ejectment suit might be brought against the occupant of the land, although he was only an employee or agent of the person claiming to be owner. However, that was a case in which the owner could not be sued, because it was a sovereign State. Therefore the case last referred to would fall within the exception laid down in *Polack* v. *Mansfield,* supra.

We deem it proper to refer to the principal cases cited in Cyc. and by Warvelle, in order that the facts on which the decisions in those cases rest may be compared with the facts in the present case.

In *Hawkins* v. *Reichert* the evidence was conflicting. Some evidence tended to prove that defendant moved a small wooden building on the premises, which was the beginning of the ouster, and was in possession and claiming the premises as his own at the commencement of the suit; that one Klatt, who lived in the house that was moved upon the premises, was but the servant of the defendant; that he was working on the premises and under the direction of the defendant, and moved the house under his orders. On the other hand, the testimony tended to prove that Klatt was a tenant of the defendant, and the defendant testified positively that Klatt

De Garmo v. Prater.

was his tenant, and other testimony tended to the same conclusion. The court said: "It will be readily seen that a mere servant or employee may in one sense have the occupation of the premises, over which he has no control, and in which he claims no right; but his occupation is the occupation of his employer, within the meaning of that term as employed when treating of the action of ejectment. Conceding that Klatt was personally present and living in the house, it was still a question of fact for the court to determine whether he was there in his own behalf or only and solely as the employee of the defendant." Preceding this the court said: "The doctrine is very clear that, as the action lies only to recover the possession of the premises wrongfully withheld from the plaintiff, it must be brought against the person who, at the commencement of the action, withholds the possession; that is to say, it must be brought against the occupant. [Citing authorities.] The tenant—and not his landlord, unless he is also an occupant—should be made the defendant. In this case the evidence is conflicting as to who was the occupant of the small portion of land in controversy at the commencement of the action." In *Polack* v. *Mansfield* the decision in *Hawkins* v. *Reichert* was approved; but, it appearing that the land was held by an officer of the United States government for military purposes, as the government could not be sued in the State court, it was held that the officer might be made a defendant in ejectment as the person in actual occupation. In *Chiniquy* v. *Catholic Bishop* it was stipulated on the trial of the issues that

there was at St. Anne an incorporated religious society
by the name of the Christian Catholic Church at St.
Anne, incorporated under the general laws of Illinois;
that this society was a Protestant religious association,
not in communion with the Roman Catholic Church or
having any connection therewith; that defendant
Charles Chiniquy, for five years next preceding the ac-
tion, had been a minister of this religious society, and
had regularly officiated in the building which stood upon
the premises in controversy; that for some five years he
had kept a stable on a portion of the premises sought to
be recovered, and kept his horses and stock there, but
that prior to the commencement of the action he had re-
moved his stable and stock; that the other defendants
were the trustees of the society, with the exception of
one Gustave Demars, and that the said trustees had con-
trol of the premises and employed the said Chiniquy
as the minister of the church, and Gustave Demars as
a teacher, and that he had taught a school in the build-
ing from a time prior to the commencement of the suit
and until the suit was commenced; that such posses-
sion and control by the trustees was adverse to the plain-
tiff, and that the possession and control of Chiniquy and
Demars (if any) was under the trustees, and was also
adverse to the plaintiff. The trial judge instructed the
jury that if Chiniquy and Demars occupied the premises
only for the purposes of a minister to conduct public
worship, and as a school teacher, and that they so oc-
cupied the premises in the employ of a society or corpo-
ration known as the Christian Catholic Church of St.

Anne, and under their direction, and had no other or further possession or control of the premises, and that the trustees of the corporation or society had the actual possession, then the plaintiff could not recover against Chiniquy and Demars. In disposing of this matter the court said: "This instruction excludes the idea that Charles Chiniquy and Gustave Demars were in possession of the premises as tenants of the trustees, but is drawn on the hypothesis that they were merely their servants or employees, performing their daily or weekly tasks upon the premises, and not the occupants in the sense of the ejectment law. It puts a case which, if believed by the jury, would no more render Chiniquy and Demars liable to an action of ejectment than would be the cashier or teller of a bank, if a suit was brought against a banking corporation to recover possession of the banking house. It surely cannot be said that a clergyman, who preaches on Sunday or any other day of the week in a church edifice, under the direction and employment of a religious corporation, is liable to an action of ejectment, and to be mulcted in costs, at the suit of a person claiming the title against the corporation. Nor is the hypothesis on which this instruction is drawn excluded by the stipulation in the cause, for that does not admit possession by Chiniquy and Demars. It is only on the ground that they are in possession, and that such possession is admitted to be adverse to the plaintiff, leaving the question of possession debatable. The facts do not show it existed in them, but in the trustees by whom they were employed. As well might the claim-

ant of a farm bring his action against the men employed to cultivate the farm by the occupant in adverse possession. The action would not lie against such employees, they not being occupants in the sense of the ejectment law."

In *Chatard* v. *O'Donovan* it appeared that plaintiff was a bishop of the Catholic Church, and that he had placed O'Donovan in possession of the parsonage of the congregation named, to occupy so long as he served the congregation as priest, but that his term of service depended entirely upon the will of the bishop, and that it was his duty to surrender the property whenever he should be removed from his care of the congregation by the bishop; the bishop, under the rules of the church, being the sole arbiter of the question as to when a removal should be made; that for good cause to him appearing the bishop removed O'Donovan and demanded possession of the parsonage and church, which O'Donovan refused to yield. Thereupon suit was brought for the possession. The court held that the plaintiff was entitled to recover, on the ground that the relation between the parties was that of master and servant, and that the possession was the possession of the bishop; that the occupancy of the servant was subject to the will of the master, and when the relation of servant and master terminated it became the duty of the servant to at once vacate the premises.

There is nothing in *Shaw* v. *Hill* applicable to the subject except the following: There was "some evidence tending to show that one Curran was in the actual occu-

pancy of the premises at the time this suit was brought, and it is claimed by the defendant that he should have been made a defendant. It was shown, however, that the occupancy of Curran was for but a short time, and while he was working for defendant; that he made no claim to any rights in the land, either as tenant or otherwise. It seems that he wanted to move in a house on the premises, and the defendant permitted him to do so. Under the circumstances, it was not necessary to make him a party."

In *Lattie-Morrison* v. *Holladay* (*Morrison* v. *Holladay*) one of the questions was whether a service on one Malin was sufficient to stop the running of the statute of limitations in a suit brought to recover an interest in the property known as the "Seaside House." The court, after stating that under the Oregon Code an action for recovery of real property must be commenced against the party "in the actual possession of the premises at the time," said: "The facts about which there is no dispute are that Malin, who resided in Portland, was temporarily in possession of the property in controversy at the time the action was commenced as the mere servant or employee of Holladay, having been sent down a few days before to prepare the Seaside House for the reception of guests, and to act as manager thereof during the season, and that he claimed no interest in, or right to, the possession of the premises in any other capacity than as a mere hired servant or employee, subject to the orders and control of his employer. Under

such circumstances it seems to us manifest that his possession was that of his employer, and that he was not a proper party to the action to recover possession of the premises. The person against whom the statute requires the action to be brought must be more than a mere agent or servant, who claims no title to the land or right to the possession or control thereof; but it must be some person in possession, exercising acts of ownership and claiming title or right to the possession in himself. A person may be in possession of land either in person or by some agent or servant, acting under his direction or control, and, in the latter case, the possession of the agent or servant will be the possession of the employer, and he is the party against whom the action must be commenced, and not the agent or servant."

In *Danihee* v. *Hyatt* the plaintiff brought his action of ejectment against John Hyatt for a small triangular piece of land lying between the premises occupied by the plaintiff and the premises in which the defendant's wife had a leasehold interest. Soon after defendant's wife acquired title to the lease she entered into the actual possession of the premises thus conveyed, together with the piece of land in dispute, and thereafter actually occupied this disputed land, claiming that it formed a part of the land to which she had acquired title under the leasehold deed. She graded the land in dispute, making a driveway partly over it and partly over her adjoining land, which extended from the highway in front to a barn standing in the rear. When plaintiff commenced his action, he knew that defendant's wife

was the actual occupant, and that she claimed to be the sole and exclusive owner. Before the suit was brought the plaintiff constructed a fence around the southern line of the land in dispute, and this was removed by the defendant. Afterwards he placed a load of wood upon the disputed land, and this the defendant removed. The defendant also assisted his wife in placing and fastening a wagon thereon. The defendant, in removing the fence, and removing and placing the wagon upon the land, did so at the request, under the immediate direction of, and solely for his wife, and to aid her in maintaining her possession of the premises over which the controversy had arisen. On these facts the court said: "The defendant not being in actual occupation of the premises, but having performed the acts mentioned merely as a servant or employee of his wife, without claiming title or right of possession, ejectment will not lie against him."

Numerous cases are cited by defendant exhibiting different states of facts wherein persons were held to be servants rather than tenants. Of these we need only cite, as typical of all, *Mead* v. *Owen,* 80 Vt., 273, 278, 67 Atl., 722, 13 Ann. Cas., 231; *Davis* v. *Williams,* 130 Ala., 530, 30 South., 488, 54 L. R. A., 749, 89 Am. St. Rep., 55; *Haywood* v. *Miller,* 3 Hill (N. Y.), 90; *Kerrains* v. *People,* 60 N. Y., 226, 19 Am. Rep., 158; *Bowman* v. *Bradley,* 151 Pa., 351, 24 Atl., 1062, 17 L. R. A., 213; *Hughes* v. *Overseers of Chapham,* 5 M. & G., 54; *King* v. *Stock,* 2 Taunt., 289. We deem it unnecessary to review all of these cases. The first of these cited suffi-

ciently reviews all of the others. The principle to be extracted is, in general, that where the occupation of the house is a mere incident to the employment of a servant he holds the house as servant, and not as tenant, and his right to its occupation ends with his right of service. Some of the illustrations given are where a man is employed to work on a farm, and is allowed to occupy a house on the premises while so working; or where a hostler is allowed a room over a stable; or a porter the use of a house at his master's park gate, while engaged in his master's service; or where domestic servants are allowed to occupy rooms in the house of a master during their service to him. These instances present cases of clear and easy solution. However, the authorities show that the solution of each case depends upon its particular facts, and it is often difficult to determine, in relation to farms and outlying lands especially, whether the occupant is a tenant or a mere servant. We have in this State one case which comes nearer to the particular state of facts we have in hand than any other that we have encountered. This is *Colcord* v. *Hall,* 3 Head, 625. In that case it appeared that the parties had entered into the following written contract, viz.: *"Things that I want done.*—Fence at common put up; to keep all the fences up and sure to keep out the hogs and other stock. I wish you to do the best you can with the potatoes and oats, and also the clover, and to collect the pasturage, and to receive the money for me, and for you to use what money so collected, and for sale for potatoes, oats, etc., to be applied to the payment of taxes

De Garmo v. Prater.

and building of fence, etc., and for the rendering of the above services to have the house rent, use of garden, firewood, and pasturage for what cows you keep for family use. Mr. A. J. Hall to hold possession until the 25th of December, 1859, and said Hall to have entire control of the premises as agent for Ariand E. Colcord." In the fall of the year Mrs. Colcord forcibly expelled Hall from the premises, to regain which he instituted an action, and obtained judgment in his favor in the trial court. The court said: "It is now insisted that, under this writing, Hall was merely the agent, and not the lessee, of A. E. Colcord, and that his agency might be put to an end at any time, and the possession and use of the land lawfully resumed by her, and that the circuit judge erred in instructing the jury otherwise. We do not think so. He was not a mere agent, but, in addition, took an interest in the premises, as the lessee of A. E. Colcord, and was entitled to the possession until December 25, 1859. This is too plain for argument. We must take the entire instrument together, and give effect to all its parts. His agency may very well stand with his interest as lessee."

We have stated the rule prevailing in other States, and have given numerous illustrations from cases decided in those States. Where the relation of master and servant merely is apparent and unquestioned, and the master is subject to suit, we see no practical inconvenience in its administration. Where, however, the solution of this question as to whether the person in occupation of the land is in fact a tenant, or merely a serv-

ant, depends upon a disputed state of facts, there will always be great inconvenience in applying the rule in ejectment cases—enough to make it extremely perplexing for one about to sue in ejectment for the possession of his land. In a question so intimately affecting land titles in this State we must adopt a course of decision which will best safeguard that important interest, without being too much swayed by the decisions of other States.

The question in the phase now represented is one of first impression in this State, and we must adopt a rule which is in harmony with the policy of our law.

Our Code (Shannon, sec. 4972) provides, as to the actions of ejectment: "The action is brought against the actual occupant, if any, and, if no such occupant, then against any person claiming an interest therein or exercising acts of ownership at the commencement of the suit." We have no decision construing the word. "occupant" as it occurs in this section. It must be construed in the light of the history of ejectment cases as they have arisen in this State. The defense most generally interposed in this class of cases has been the statute of limitations. Until within comparatively a recent period there were many very large bodies of unoccupied land in this State, and there are still such bodies in our mountainous regions. The custom has been for persons desiring to claim land either to squat upon it themselves, or to place a tenant thereon to hold for them. It has been held that when the owner saw a possession fixed upon his land, or when such possession was so open, public,

De Garmo v. Prater.

and notorious that he ought to have seen it, or could have seen it by exercising proper care over his lands, he should bring suit within seven years after such possession taken, if maintained continuously; otherwise, he would forfeit his right of action, and the party in possession, if holding for himself under color of title, would obtain title to the land by the lapse of time, and, in case he did not hold under color of title, he would have a perfect defensive right to the extent of his boundaries as shown by his inclosures, or by some paper defining his boundaries. The same result would follow in favor of a person for whom the occupant might be holding. It has never been understood in this State that the owner, seeing an occupant upon his land, was bound to investigate at his peril whether the latter stood in the relation of tenant to some other person, or employee or servant of that other person, or in his own right. It has all along been understood that he would have the right to proceed against the occupant without naming any one else whomsoever. Such privilege has proven very important to owners asserting title to lands adversely claimed. Those who are in possession of the lands of another, seeking to hold them by lapse of time, are generally speaking, not very just, and will not scruple to deceive or mislead the owner, or throw him off his guard. It is entirely possible that such owner, interrogating the person in possession, might be informed that he was tenant of some other person for such land, and allow the suit to proceed until the seven years' limitation had expired, and then make it known, or permit the owner to discover,

that he, such occupant, was merely the servant, agent, or employee of that other person, to hold possession for him. We do not think that it is incumbent upon owners, asserting title to land, to take the risk of such inquiries. It is quite within the bounds of probability that the person in possession might claim to be the tenant of one person, or the servant of one person, when he occupied that relation to another, and other frauds might be perpetrated. It has always been understood in this State that the owner, or person claiming to be owner, might proceed against the occupant, no matter whom he might be, or in what relation he stood to any other person. This is regarded as the only safe rule. We do not mean, of course, that where the person is occupying, and he has servants under him, or his own family living with him, that these must be made parties. The occupant would be the person on the land and ostensibly controlling it. Of course, there may be a possession without actual bodily occupancy, as where one has built a house upon land and has locked the doors, or has inclosed a field and has maintained his inclosures. This may be considered a form of occupancy; at all events, it is a possession, and it has been held in this State that suit may be brought against the party maintaining such possession or form of occupancy.

There is no danger that the rights of persons whom such occupants represent, either as tenants or servants, may be injured by the construction we have given. It has been held in this State that, although judgment has been rendered against the person in possession, it will

not bind the person under whom the possessor claims, unless that person causes himself to be made an actual party to the suit, which he may do under our Code. Of course, the judgment will be binding against the *terre-tenant* or occupant, and he may be ejected from the land. This, however, will not prevent the person under whom he claims himself bringing suit against the party prevailing against the occupant. However, he will, of course, be under the great disadvantage of being required to prove a complete title, and show his right to immediate possession. It is also true that many perils must be encountered by the plaintiff in ejectment where the land title is complicated. Hence, it is true that by having his tenant, or the person claiming under him, ejected, and having himself thus forced to become a plaintiff, he has suffered a distinct disadvantage. To alleviate this, the rule has been laid down in this State that, if the tenant or person claiming under another fail to notify him of a suit brought, the latter may cause the writ of possession to be stayed, and the judgment set aside, and be allowed to defend, even after the close of the term of court. These principles will be found discussed in *Hillman* v. *Chester,* 12 Heisk., 34, and cases cited; *Conn.* v. *Whiteside,* 6 Humph., 47; *Boles* v. *Smith,* 5 Sneed, 105.

Of course, cases may be imagined where servants in possession, having no personal interest in the property, would neglect to notify the master of a suit brought against them, and judgments by default might be taken and writ of possession awarded without knowledge of

the master. This would be a great hardship, but it would be met by the rule in the cases just referred to. We may also imagine cases where the possession of the servants would be of such casual character as that they would not be regarded as occupants. There is no danger, however, of such a mistake, where a person is placed upon land, as in the case now before us, for the express purpose of holding under and for another, and the person so placing him is trying to obtain title to that land by adverse possession, and has chosen to put the occupant of the land in the relation of technical employee rather than of technical tenant. In such a case there is a distinction without a difference. If he is a tenant holding posssession of the land for his landlord, in order that his landlord may obtain title by adverse possession, he accomplishes no more by seven years' possession than a person who holds like possession under his master, and is compensated by wages for the purpose of maintaining possession; the service performed by him being merely that of maintaining possession by residing upon the land and keeping the inclosures up. We have no doubt that in such a case the person occupying the land is a true occupant in every view of the case. Indeed, it generally appears in this class of cases that the person placed on wild lands with a view to establishing and maintaining an adverse possession for a claimant requires to be paid for his services either in money or in a part of the land, and it has never before been insisted in this State, so far as we have any knowledge, that such person was a mere servant. instead of tenant, and hence not subject

to be sued in ejectment. A decision favorable to such contention could not have other than a disastrous effect upon land titles in this State. It is right enough that when one man shall be placed upon the land, or in the house, of another, and a controversy arises between them in respect of that matter, the question shall be investigated and determined as to whether the occupant is, under the terms of the contract, a tenant, or a mere servant to be summarily expelled on termination of the service if he fail to move; but it is quite a different matter whether the rights of a third party in the land shall depend upon the settlement of such a question, the facts on which it depends being wholly foreign to him, and unknown to him, the penalty of a mistake in this collateral question, wholly aside from his own title and right, being the forfeiture of that title and right. We cannot yield our assent to a doctrine carrying such consequences.

2. There is a regular chain of conveyances from the grantee of the State down to the complainant. It is insisted, however, by the defendant that one link is broken. The facts connected with this matter are as follows: There appears upon the registration books of Marion county a copy of the grant which the State issued to Henderson Pope, and, following that, a writing purporting to be a deed referring to the maker of the deed as "the grantee in the within grant," and purporting to convey to David Schoolfield the land described in that grant. It is said that this deed, even if properly introduced in evidence, conveys nothing, because it de-

scribes nothing. We are of the opinion, however, that it is very clear from these papers, as they appear upon the record of the register's office, that the deed was written upon the back of the grant, and referred to the land therein described as the land conveyed.

It is next insisted that the deed was not properly introduced in evidence, because there is no certificate of the register that the paper relied upon and introducd in evidence as a copy was in fact a copy thereof. The objection is based upon the fact that the register, in making certificate, referred to "the foregoing grant." We are of the opinion, however, that under the liberal construction which the paper should be given it is perfectly clear that the register intended to certify that all which preceded his certificate was a true copy of what appeared upon his record. Whether he intended to use the word "grant" in the sense of a grant or patent by the State, or in its more enlarged sense of any kind of a deed from one person to another, is immaterial. If in the former sense, he understood by grant the whole paper which he had copied, both face and back; or, if he understood the word "grant" in its larger sense, the result would be the same.

We are of the opinion, therefore, that the deed was properly admitted, that the complainant has shown a complete chain of title, that the chancellor's decree should be reversed, and a decree should be entered here for the complainant.

De Garmo v. Prater.

### ON PETITION TO REHEAR.

The complaint made in the petition is based on the second point contained in the original opinion of the court. The instrument there referred to appears as follows upon the transcript of the record of the lower court:

"No. 3,575.    Henderson Pope.

"State of Tennessee No. 3,375.

"To all whom these presents shall come, greeting: Know ye that by virtue of entry No. 1,201 made in the office of the entry taker of Marion county and entered on the 18th of February, 1834, pursuant to the provisions of an act of the general assembly of said State passed on the 9th day of January, 1830, there is granted by the said State of Tennessee unto Henderson Pope a certain tract or parcel of land containing five thousand acres by survey bearing date of the 14th day of July, 1834, lying in said county and in the county of Bledsoe adjoining a five thousand acre survey made in the name of Aaron Schoolfield known as No. 1 and on both sides of Big Brush creek a branch of Sequatchie river beginning at a black oak and hickory and white oak pointers said Schoolfield's northeast corner of said survey near the left bank of the north fork of said Brush creek crossing and running thence with said Schoolfield line east crossing said Long fork one thousand poles to a stake then north nine hundred and sixty poles to a stake then east crossing said Brush creek one thousand poles to a white oak near the east bank of said creek at the foot of a hill in Bledsoe

county, thence south crossing Savages turnpike and said Brush creek again nine hundred and sixty poles to the beginning exclusive of one thousand acres contained in the lands with the hereditaments and appurtenances.

"To have and to hold the said tract or parcel of land with its appurtenances to the said Henderson Pope and his heirs forever.

"In witness whereof William Carroll Governor of the State of Tennessee hath hereunto set his hand and caused the great seal of the State to be affixed at Nashville on the twenty-ninth day of February, in the year of our Lord one thousand eight hundred and thirty-four and fifty-eighth year of our independendence. Wm. Carroll. "By the Governor:

"Sam G. Smith, Secretary.

"Henderson Pope is entitled to the within described land. R. Nelson, Register of the Mountain Dist. Recorded in my office Book E, page 310. R. Nelson, Register of the Mountain District.

"Know all men by these presents that I Henderson Pope the grantee within named for and in consideration of the sum of five hundred dollars to me in hand paid the receipt of which is hereby acknowledged have granted bargained sold assigned and set over and by these presents do grant, bargain, sell, assign and set over unto David Schoolfield of the county and State aforesaid his heirs and assigns the within named tract of land containing five thousand acres and described as therein mentioned to have and to hold the said tract of

land hereby mentioned unto the said David Schoolfield his heirs and assigns forever. In witness whereof the said Henderson Pope hath hereunto set his hand and seal, this 11th day of September, 1834, signed, sealed and delivered in the presence of us. Henderson Pope. [Seal.] "State of Tennessee, Bledsoe County.

"Personally appeared before me Sam'l S. Story clerk for the circuit court for said county Henderson Pope with whom I am personally acquainted and who acknowledged that he signed sealed and executed the above transfer for the purposes therein contained witness my hand at office the 12th day of September, A. D. 1834.

"Registered 20th Feb. 1836.

"Sam'l Story, Clerk.

"State of Tennessee, Marion County.

"I, C. A. Quarles, register, do hereby certify that the above and foregoing grant and certificates is a true and correct copy of a grant and certificates as the same appears of record in my office in Book C, page 374. Witness my hand and seal this Feb. 8, 1910. C. A. Quarles.

"[Seal.]               For Marion County, Tenn."

The exceptions made to the introduction of the foregoing evidence are thus stated in the record:

"On the trial of this cause, when complainant offered in evidence the paper writing purporting to be a transfer, assignment, deed, or conveyance from Henderson Pope to David Schoolfield, dated the 11th day of September, 1834, and being part of a paper writing made Exhibit 5 to the deposition of A. D. R. Lanier, the de-

fendant excepted to the introduction and consideration by the court as evidence the said paper writing: First, because it did not describe any lands thereby conveyed, or attempted to be conveyed; second, because it was not certified; third, because it was not properly certified as required by law in such cases; fourth, because there is nothing in the record to show that said paper writing was ever appended or affixed to, or indorsed upon, any part of the paper writing preceding it, purporting to be a grant for five thousand acres of land to Henderson Pope, being grant No. 3,375."

We think the original opinion fully and properly disposes of all of these objections. We shall only add to what is there said on the general subject that the register has the right to give certified copies, and such copies are evidence. Shannon's Code, section 567, subsec. 7; also sections 5573 and 5576. Section 5573 reads: "Duly certified copies of all records and entries, official bonds, or other papers belonging to any public office or by authority of law filed to be kept therein are evidence in all cases." Section 5576 reads: "The term 'record' used in the foregoing section includes any record of any county, common law, circuit, criminal or chancery court, and, in general, every public record required by law to be kept in any court of this State; and also the books of the registers, the surveyors, and the entry takers throughout the State."

No form for such certificate is prescribed in our statutes or decisions. The matter must therefore be determined on principle. A certificate of the register of

De Garmo v. Prater.

deeds is simply a statement under oath by a public offi-
cer that what he has copied preceding his certificate is
a true copy of his record.   The best form is that the
transcript contains a full, true, and complete copy of the
record, document, or paper; however, it has been held
sufficient that a certificate stating that the above is "a
true and correct transcript of the record of the proceed-
ings in this case, as the same remains of record in my
office" was good.   *Butler* v. *Owen,* 7 Ark., 369.   The
following has been held sufficient:   "The within and
foregoing writing is a true copy of a deed made by Isaac
Bull to George Turman on record in my office in Book
R. R., page 75."   *Vickery* v. *Benson,* 26 Ga., 582.   "The
above and foregoing is a true copy," etc., has been held
to be a sufficient certificate.   *Harden* v. *Webster,* 29 Ga.,
427.   In *Reeves* v. *State,* 7 Cold., 96, the following cer-
tificate of a record in the comptroller's office was held to
be good:   "I certify that the foregoing is correct, as ap-
pears from vouchers, etc., now on file in my office.   G.
W. Blackburn.   Comptroller's Office, Nashville, Tennes-
see, 1869."   The court said this certificate was not as
formal as it might have been, but that it was sufficient
to authorize the paper to be read in evidence.   7 Cold.,
96, 105, 106.

But the point stressed in the petition to rehear is that
the register, in his certificate, used the words "forego-
ing grant and certificates."   As we understand the argu-
ment contained in the petition to rehear, and the ac-
companying brief, it is that the certificate only covered

the technical grant from the State, and not the deed on the back of the grant, conveying to David Schoolfield the land described in the grant. This point is, we think, fully covered in the original opinion. An examination of all that precedes the register's certificate shows that it but constitutes one instrument, with the acknowledgment thereof, taken before the clerk. It is certainly true, as said by counsel in the petition to rehear, that we have not before us the State's original grant, so that we can see actually written upon its back the deed made by Henderson Pope to David Schoolfield; but it is clear to any disinterested mind that this must have been the case, because the deed says: "Know all men by these presents that I, Henderson Pope, *the grantee within named,* . . . have granted, bargained, sold, assigned and set over, and by these presents do grant, bargain, sell, assign, and set over unto David Schoolfield . . . *the within named tract of land* containing five thousand acres, *and described as therein mentioned.*" It is clear, from the connection of the two papers, that Henderson Pope, having in his possession the grant, wrote on the back of it his deed to David Schoolfield, and took it to the clerk of the court named, and there acknowledged his deed. It is equally clear that the register of Marion county, when he made his certificate, on the 8th of February, 1910, conceived that he was certifying as a correct copy of his record all that preceded his certificate. It was not required that he should correctly designate the legal nature of the instrument certified. He says in his certificate that it is a true copy of what appears on

De Garmo v. Prater.

his record in Book C, page 374. Whether the register understood that the writing on the back of the grant was a part of the grant, or whether he understood that the grant was a part of the deed, and spoke of the latter as the grant, as deeds are sometimes denominated, and that the technical grant was used, as it truly was, for purposes of description, and really was a part of the deed, is not material. We can see from the whole writing, taken together, that it was but one instrument, and that was the deed written on the back of the grant; the grant being, as stated, a part of the deed used for purposes of description. Any other conclusion would be nothing but a hairsplitting distinction, without substance or merit. If we had any substantial doubt about the correctness of the view we take, we would remand the case to the court below, with leave to produce a proper certificate of the contents of the record, since we have no doubt that justice would be promoted thereby, and that the opposite course would be a sacrifice of justice to barren technicalities.

Let the petition to rehear be overruled.